For the reasons stated the verdict and sentence are affirmed.

**15 So.2d 801**

**Succession of PIPITONE.**

**No. 37076.**

Nov. 8, 1943.

Titche & Titche and Bernard Titche, Jr., all of New Orleans, for opponent, appellant.

Terriberry, Young, Rault & Carroll and Harold J. Zeringer, all of New Orleans, for dative testamentary executor, appellee.

Leon Sarpy and Friedrichs, Connolly & Simoneaux, all of New Orleans, amici curiae.

O'NIELL, Chief Justice.

This is an appeal from a judgment authorizing a testamentary executor to sell at private sale, under the provisions of Act 290 of 1938, certain real estate belonging to the succession of the testator.

The act of 1938 reads as follows:

"An Act

"To authorize the sale of any succession property by executors and administrators at private sale without priority under a judgment of a court of competent jurisdiction, upon the giving of due notice to the creditors and heirs, and prescribing the method of procedure.

"Section 1. Be it enacted by the Legislature of Louisiana, That, whenever it shall appear to the executors or administrators of any succession or estate of a deceased person to be to the manifest advantage of the succession or estate, its creditors or heirs, to sell any movable or immovable property at private sale, in whole, in part, or in indivision, for cash, in order to pay debts or legacies, or both, or for any other purpose, the executor or administrator may, although not obliged so to do, file a petition in the district court having jurisdiction of the

succession proceedings, setting forth a full description of the property to be sold, the price and conditions of the proposed private sale, and the reasons which make it advantageous to the succession, heirs or creditors to dispose of the property.

"Section 2. In any sale of succession assets under the provisions of this Act, there shall be no priority as between movable and immovable property, provided, however, that the administrator or executor shall set forth his reasons if he recommends the private sale of immovable property before the movable property has been exhausted.

"Section 3. That, whenever such petition shall be received by the court, the judge thereof shall order that due notice be given by publication, in the manner prescribed for judicial advertisements, of said application to sell movable or immovable property, or both, at private sale, and said notice shall require all those whom it may concern, including the heirs, to make opposition, if any they have, to such course, within ten days, including Sundays and holidays, from the day whereon the last publication appears. If no opposition be made to the granting of the authorization prayed for, the judge shall, if he deems it expedient, order so authorize [order the authorization] and shall fix the minimum price to be accepted. If opposition be made, the judge shall hear the matter and determine thereon in a summary manner.

"Section 4. That nothing herein shall be construed as in any wise altering or abrogating the existing laws relating to the administration of successions and judicial

sales, except insofar as they may conflict with the provisions of this Act; provided, however, that nothing in said Act contained shall in any manner be construed as affecting the provisions of Acts 21 of 1890, 246 of 1918 and 121 of 1934."

The executor in this case, in his petition for authority to sell the property, sets forth as "the reasons which make it advantageous to the succession" to dispose of the property, and particularly to sell it at private sale, that he has received a written offer for the property at the price stated in his petition; that it is to the manifest advantage of the succession and of the heirs to sell the property at private sale because it will be necessary to sell the property eventually in order to settle the estate; and that the proposed private sale in compliance with the contract will cost the succession considerably less than a public sale would cost, on account of the cost of appraisement, advertisement, and possible readvertisement in the event of there being no acceptable bid at an offering of the property at public auction.

Willis A. Pellerin, being the one with whom the executor has the contract referred to in his petition, filed an opposition, averring that the succession did not owe any debts of any consequence, and had on hand $13,000 in cash, which was far more than enough to pay any debt that the estate might owe; and that there was no unpaid legacy, and hence no necessity nor reason for the executor to sell the property at either public or private sale.

The opponent contends that the expression in Section 1 of the act of 1938, "when-

ever it shall appear to the executors or administrators of any succession or estate of a deceased person to be to the manifest advantage of the succession or estate, its creditors or heirs, to sell any movable or immovable property at private sale", means whenever it appears to be to the manifest advantage of the succession, et cetera, to sell the property at private sale *instead of selling it at public sale.* He contends that the object of the statute is merely to allow executors or administrators to sell the property of the succession at private sale in cases where it is necessary to sell it for a purpose for which executors and administrators are allowed by law to sell it, but were obliged heretofore to sell it at public auction. The opponent contends that, inasmuch as this succession owes no debts, and as there is no legacy to be paid or delivered, the executor has no authority to sell the property of the succession either at public sale or by private sale; and that he, the opponent, is entitled to have the heirship of this succession determined and judicially decreed, and to have the heirs placed in possession of the property of the succession, and to receive from them a warranty deed for the property which the executor has contracted to sell to him.

The opponent avers in his opposition that, if the act of 1938 should be construed as enlarging the powers of executors and administrators so as to allow them to sell succession property at private sale for purposes for which they were not allowed by law to sell such property even at public sale previous to the adoption of the act of 1938, then the act is violative of the provision in Section 16 of Article III of the Constitution, requiring that every act of the Legislature shall have a title indicative of its object.

The executor, in his answer to Pellerin's opposition, admits that there is no unpaid legacy, that the succession does not owe any debt of any consequence, and that according to a provisional account already filed by the executor he has on hand more than $13,000 in cash belonging to the succession.

The petition and opposition were submitted on a stipulation of facts, in which the executor admitted that the opponent was in the situation of a creditor, by reason of his contract to buy the property, and therefore had a sufficient interest in the matter to give him the right of action to oppose the petition of the executor for authority to sell the property.

After due consideration of the issues presented by the pleadings and the stipulation of facts the judge gave judgment for the executor, authorizing him to sell the property at private sale in compliance with his contract. The opponent is appealing from the judgment.

We agree with counsel for the appellant that Act 290 of 1938 does not allow executors or administrators to make a private sale of succession property in a case where they could not lawfully sell the property at public sale. The main purpose of the act of 1938 is to avoid the trouble and expense of selling succession property at public auction in any case where there is some reason of necessity for disposing of

the property, and where it is to the advantage of the succession, or of the creditors or heirs, to make a private sale instead of offering the property at public auction. But we do not agree with counsel for the opponent that the only purpose for which succession property may be sold now, under the provisions of the act of 1938, is to pay debts or legacies. In the first place, it is declared in the act itself that a private sale may be made "in order to pay debts or legacies, or both, or for any other purpose". This phrase "for any other purpose" means, of course, for any other lawful purpose, or reason of necessity. It does not give to an executor or administrator carte blanche to sell succession property for any purpose or reason that he may deem sufficient, as the agent for the heirs or creditors or legatees. The expression in the beginning of Section 1 of the act, "whenever it shall appear to the executors or administrators * * * to be to the manifest advantage of the succession or estate, its creditors or heirs, to sell any movable or immovable property at private sale", means, primarily, whenever it shall appear to be to the manifest advantage to sell the property at private sale *instead of offering it at public auction.* But that provision in the statute does not contradict the subsequent provisions, enlarging the authority of executors and administrators so that now they may sell succession property not only to pay debts or legacies but also for any other necessary or advantageous purpose. This interpretation is emphasized by the concluding phrase in Section 1 of the act, "to dispose of the property", in the declaration that an executor or administrator, in his petition for authority to make a private sale of succession property must set forth "the reasons which make it advantageous to the succession, heirs or creditors to dispose of the property". The phrase "to dispose of the property" is unqualified, and not subject to the condition that the property is to be disposed of by private sale. Stated somewhat differently, our interpretation of the first section of Act 290 of 1938 is this: Although the provision in the first part of this section—that it must be advantageous to sell the property at private sale—means in comparison with selling it at public auction, nevertheless, the provision at the end of this section of the act—that the executor or administrator must set forth in his petition the reasons which make it advantageous *to dispose of the property*—means that it may be advantageous *to dispose of the property,* whether at public or private sale, not only for the purpose of paying debts or legacies but for any other lawful purpose. That interpretation is clinched by the expression "or for any other purpose", in the phrase "to pay debts or legacies, or both, or for any other purpose". The purpose of the lawmaker in adding the phrase "or for any other purpose" was to make provision for any legitimate purpose that might arise, for disposing of the property, besides the purpose of paying debts or legacies.

The appellant argues that the executor did not set forth in his petition for authority to sell the property at private sale any real reason that might make it advantageous to the succession, or to the heirs or

creditors, to dispose of the property—whether at public or private sale. The petition alone does seem deficient in that respect; but, in the stipulation of facts on which the matter was submitted to the judge, and which greatly amplified the showing made in the executor's petition for authority to sell the property, appears a very substantial reason why it will be advantageous to the heirs for the executor to dispose of the property, and particularly to dispose of it by the private sale for which the executor has negotiated with the appellant. One of the heirs of the succession, a sister of the deceased Giuseppe Pipitone, namely, Mrs. Lorenza Pipitone Corte, is an enemy alien, being a national of Italy and residing in that country. The Alien Property Custodian was duly notified, by the executor, of Mrs. Corte's interest in this succession; and she cabled to her son, Peter Corte, who resides in Vicksburg, Mississippi, authorizing him to represent her in the matter; but it is impossible—and is admitted to be impossible—to obtain from Mrs. Corte a power of attorney to represent her in the disposition of her interest in the succession. Executive Order No. 9095, of March 11, 1942, as amended by Executive Order No. 9193, of July 6, 1942, Title 50, U.S.C.A.Appendix, § 6 note, makes provision, in detail, for disposing of the property of enemy aliens. These provisions seem applicable to this case. The heirs residing in Louisiana are entitled to have possession of their interest in the succession; and they are not obliged to hold the property jointly or in indivision with the enemy alien indefinitely. If the local heirs should be given possession of their undivided interest in the property they would be obliged to sue for a partition by licitation, or public sale of the property, and thus to convert the interest of the enemy alien into a share of the proceeds of the sale. That procedure would be more expensive than the proposed sale of the property under the provisions of Act 290 of 1938. It is advantageous therefore that the executor should make the sale and retain Mrs. Corte's share of the proceeds in custodia legis, subject to such disposition as the executor may be obliged to make of the money under the provisions of Executive Order No. 9095, as amended by Executive Order No. 9193.

 Our interpretation of Act 290 of 1938, as enlarging the authority of executors and administrators generally, so as to allow them to sell succession property for any legitimate purpose besides the purpose of paying debts or legacies, does not make the act violative of Section 16 of Article III of the Constitution. That section does not require that every change which an act of the Legislature may effect in other laws on the subject shall be expressed in detail in the title of the new act. It requires merely that the title of the act shall be appropriate to the subject dealt with in the act itself, and shall not be misleading as to any purpose intended to be accomplished by the act. That is emphasized by the fact that, in the Constitution of 1921, the clause "and shall have a title indicative of such object" was substituted for the clause "and that [one object] shall be expressed in its title", which clause appeared in every pre-

vious constitution from and after the adoption of the Constitution of 1845. See Const. 1845, art. 118; Const.1852, art. 115; Const. 1864, art. 118; Const.1868, art. 114; Const. 1879, art. 29; and Const.1898 and 1913, art. 31. It is too well established by the jurisprudence to need citation of the decisions that a title which fairly indicates the subject dealt with in an act of the Legislature, and which cannot deceive or mislead anyone reading the title of the act, is a sufficient compliance with the requirement that the title shall be indicative of the object of the act.

■ A firm of attorneys representing a local homestead association filed a brief in this case as amici curiae, contending that Act 290 of 1938 is defective in that it does not contain any provision to protect a judgment creditor of a presumptive heir, or a holder of a judicial mortgage against a presumptive heir. For that reason the amici curiae contend that the statute is violative of Section 19 of Article XIX of the Constitution, declaring that mortgages on immovable property shall not affect third persons unless recorded in the parish in which the property is situated. The author of Act 290 of 1938, who proposed it in an article in 12 Tulane Law Review, p. 412, in 1938, and who sponsored the act in the next following session of the Legislature, has filed a brief as amicus curiae, pointing out that there is nothing in Section 19 of Article XIX of the Constitution that might be so construed as to require any special provision in a statute such as the act of 1938, to protect judgment creditors of presumptive heirs of a succession whose property might be disposed of by private sale under the provisions of this act. It is argued by the amici curiae who question the validity of the act that it may open the door to fraud on the part of a presumptive heir against whom a judicial mortgage has been recorded, and induce collusion between him and the executor or administrator of the succession. We do not see how the act of 1938 can facilitate fraud on the part of a judgment debtor who happens to be a presumptive heir of a succession, or invite collusion between him and the executor or administrator of the succession. The statute provides for publication of the proposed sale and for a hearing, and for a judgment to be rendered contradictorily with all parties having an interest in the proposed sale. The presumption is that the judge in such cases will decide faithfully and refuse to approve a proposed private sale of succession property if there is any element of fraud or imposition on the succession, or on the heirs or legatees or creditors of the succession. Fraud or imposition is not made easier or more likely by the act of 1938 than it was heretofore, when succession property could be sold only at public auction. The fact that the statute does not declare that an executor or administrator shall obtain a mortgage certificate in the name of each and every presumptive heir, before selling the succession property under the provisions of the act, does not render the act unconstitutional.

The judgment is affirmed.