JANVIER, Judge.
The Public Administrator for the Parish •of Orleans, on April 10, 1953, by petition filed in the Civil District Court, judicially opened the Succession of Daniel Lustig, alleging that the decedent had died intestate and had left neither surviving spouse nor heirs, and had left property valued at more than $500.
'■ He was issued letters of administration, and, in an inventory which followed, it ’appeared that decedent had left one piece of property which was a lot of ground (valued at $800) situated in the Parish of Jefferson in the subdivision known as J. H. Little Farms Division and was designated as one-half of lot number five of Section “I”, section “I” being bounded by Little Farms Avenue, North Park Street, Stewart Avenue, and a strip of ground 40 feet in width separating that section from the right of way of the Yazoo & Mississippi Valley Railroad.
On June 18, 1953, John R. Casey, as the agent of a prospective purchaser, made a written offer to buy the property at private sale for $800 cash and, on June 29, 1953, the Public Administrator, under authority of Act 290 of 1938, LSA-R.S. 9:1451 et seq., recommended that he be authorized to accept the offer. He obtained from the Court an order authorizing him to proceed in accordance with the said statute.
On August 14, 1953, the Warren Realty Company, Inc., intervened and opposed the proposed sale to Casey, and in its opposition made an offer to buy the property for $1,000.
When the opposition came up for hearing in the Civil District Court, Casey stated that, while the original offer had been for $800, it had contemplated the assumption of all unpaid state, parish and drainage taxes which amounted to $739.38, and he then stated that he would increase his offer to $1,100 and the assumption of all said taxes.
Thereupon the Warren Realty Company asked permission of the Court to raise its offer to an amount above the total offer made by Casey but, on objection, the District Judge refused to allow the said opponent to make the said offer and dismissed the opposition on the ground that the said Warren Realty Company, Inc., was a third party intermeddler and was without interest. It is from that judgment that the matter is now before us on appeal.
*762 There is no necessity for us to set forth in full the statute on the subject, nor to quote at great length from the two' decisions which we shall discuss and which we think require the affirmance of the judgment. In these two decisions it was held that an opponent, who is neither an heir nor a creditor, is a mere intermeddler and has no right to oppose such a proposed private sale on the ground that it, the opponent, is willing to pay more than the amount offered by the person who, by making the first offer, has provoked the proposed sale.
The two decisions to which we have reference are Succession of Saxton, La.App., 72 So.2d 344, which was a decision of this Court, and Succession of Senkpiel, 227 La. 516, 79 So.2d 866, which was a decision of the Supreme Court. In each of those cases it was the same corporation, Warren Realty Company, Inc., which opposed the proposed private sale and each opposition was based solely on the ground that the opponent was willing to pay more than the amount of the original offer.
In our decision in Succession of Saxton we upheld the contention of the Adminis-tratrix, which was to the effect that “the opponent being ‘neither a creditor, an heir, nor a legatee of the above numbered and entitled succession or of the said John Albion Saxton, * * * had no interest whatsoever in and to said succession proceedings, or any of the property or effects belonging thereto, and is, therefore, not legally concerned with any of the proceedings of said succession, and is in fact an intermeddler.’ ” [72 So.2d 345]
We based that decision largely on prior decisions of the Supreme Court in Succession of Pipitone, 204 La. 391, 15 So.2d 801, and Succession of Henry, No. 40456 of the docket of the Supreme Court refusing a writ of mandamus. We said that, since Warren Realty Company, Inc., is neither an heir nor creditor, it “had no right of action to oppose the proposed private sale.”
The only possible difference between the facts in Succession of Saxton and the facts found here is that it is the State which will be the ultimate beneficiary, whereas in Succession of Saxton that fact did not appear. Counsel refer to Succession of Saxton and say that there “only private interests were involved,” and that a different question arises where a succession is vacant and the State will be the ultimate beneficiary. They say that where, as “in the present case, the paramount interests which must be faced when the State as beneficiary is the only party in interest, are controlling, and the property must bring the best obtainable price.” However, that distinction, if it is a distinction, was not present in Succession of Senkpiel, for there it was the State which was the ultimate beneficiary since there were neither surviving spouse, heirs, nor creditors. While this does not seem to be stated in the decision of the Supreme Court, it does appear in our statement in Succession of Saxton in which we referred to an earlier application for writs which had been made to the Supreme Court in Succession of Senkpiel and in which we called attention to the fact that in Succession of Senkpiel the State of Louisiana would be the “ultimate beneficiary of the administration of this vacant succession,” and that the opposition was based on the fact that the opponent was willing to pay a higher price and that, by the dismissal of the opposition, the State was “being deprived of the best obtainable price and highest offer which could be had for the private sale of said property”.
Thus the Supreme Court holds that in either case, whether it is the State which would be the ultimate beneficiary or whether some heir or creditor may be interested, a third party is without interest and that it is the duty of the administrator or the public administrator to make a full investigation and to determine what price should be accepted and to decide whether the Court should be asked for authority to sell at private sale.
Counsel say that our decision in Succession of Saxton was incorrect and they also *763 contend that the Supreme Court “lacked the jurisdictional power to hand down this Saxton decision in vacation with only four Justices participating.” They say that, as a result, our decision “has * * * been deprived of all sanction and finality, and cannot be regarded, now or at any future date as having any precedential value.” Counsel further say that the Supreme Court did not refuse to grant the writ of cer-tiorari in that case (Succession of Saxton) on the ground that our decision was correct, but refused it solely on the ground that the application for the writ was presented by a person who was “not a licensed attorney.”
Even if the refusal to grant a writ of certiorari in the Succession of Saxton did not indicate approval of our decision, in Succession of Senkpiel, supra, the Supreme Court gave complete approval to our decision, stating that our decision (in Succession of Saxton) was correct since we had “arrived at the conclusion that a third party such as Warren Realty Company, Inc., who was neither a creditor, heir nor legatee, had no right of action to oppose a private sale by the administratrix of realty owned by the decedent * * *.” [227 La. 516, 79 So.2d 868]
In that case (Succession of Senkpiel) in which it was the Public Administrator who had petitioned for authority to sell, the Supreme Court, referring to the statute in question, said:
“A reading of the statute set forth, supra, shows - that the legislature had no intention of giving a third person — ■ who is neither heir, creditor or legatee — the right to file an opposition to the private sale of succession property. The very title of the act provides that notice must be given to the creditors and heirs, and the method of procedure is therein prescribed. In the instant case, the method of procedure was followed with meticulous care.”
If it should be held that such a third party might base an opposition on the willingness to pay a higher price, the purpose of the special statute would be defeated, for, as stated by counsel for the appellees, “the Courts would be forced to accept bids, through written oppositions, ad infinitum and would be forced to consider bids even for the slightest increase in price, thereby causing great delay in expeditiously handling said proceedings.”
W. Sommer Benedict, the Public Administrator who brought the proceeding, has been succeeded by William P. Haggerty who has .obtained letters of Administration and, by order of Court, has been made party-appellee.
The judgment appealed from is amended so as to substitute William P. Haggerty as Public Administrator for W. Sommer Benedict, and, as thus amended, the judgment appealed from is affirmed at the cost of appellant.
Amended and affirmed.