408 So.2d 992 (1981)
SUCCESSION OF Mrs. Clara Pepper LAWSON.
No. 14731.
Court of Appeal of Louisiana, Second Circuit.
December 7, 1981.
*993 Horton & Jones by Donald G. Horton, Coushatta, for plaintiffs in rule-appellants.
Bethard & Davis by Henry W. Bethard, III, Coushatta, for defendant in rule-appellee.
Before HALL, JASPER E. JONES and FRED W. JONES, Jr., JJ.
FRED W. JONES, Jr., Judge.
The opponents to a private sale by the testamentary executor to himself of succession immovable property appeal a trial court judgment dismissing their opposition. We affirm.
On January 16, 1980 Robert Lawson filed a petition to probate the will of his mother, Clara Pepper Lawson, who died on December 30, 1979. Under the terms of the will, which was duly probated, the petitioner was named executor and was bequeathed one-third (the disposable portion) of the decedent's property. The remaining two-thirds of decedent's property was bequeathed in equal undivided proportions to decedent's six children, including Robert Lawson.
The executor filed a detailed descriptive list (subsequently amended) showing the estate of his deceased mother as consisting of undivided interests (totaling 65 acres) in several tracts, some of which were non-contiguous.[1] The succession property was valued by the executor at the total sum of $52,000.
On July 11, 1980 the executor filed a petition seeking court authority to sell to himself for $52,000 cash ($800 per acre) the succession property listed in the detailed descriptive list "to realize sufficient funds to pay debts and charges of the succession." Two of the executor's coheirs, Winona Lawson Marshall and Gertrude Lawson Taylor, filed an opposition to the proposed private sale, asserting that the only debts owed by the succession were executor's and attorney's fees and that "a bona fide offer to purchase the property owned by the Succession has been made to the heirs of the decedent in a sum far in excess of that offered by the executor."[2]
*994 After a hearing on the opposition, the trial judge in a written opinion concluded that there had been no genuine offer to purchase the succession property for a sum in excess of that offered by the executor; that the succession appeared to owe debts of at least $7,000; and that it was in the best interest of the succession to sell all of its property rather than undivided interests in some of the tracts.
Opponents-appellants contend that the trial judge erred in finding that (1) the succession owed the indebtedness testified to by the executor; (2) all of the succession property should be sold to pay debts which amounted to considerably less than the value of that property; and (3) there had been no offers to purchase the succession property for a figure in excess of that offered by the executor.
Louisiana Code of Civil Procedure, Article 3261 provides:
"A succession representative may sell succession property in order to pay debts and legacies, or for any other purpose, when authorized by the court as provided in this Chapter."
Louisiana Code of Civil Procedure, Article 3281 provides:
"A succession representative who desires to sell succession property at private sale shall file a petition setting forth a description of the property, the price and conditions of and the reasons for the proposed sale."
At the hearing on the opposition to the private sale, Robert Lawson testified that the succession owed funeral expenses of $1590 and a "sitter's" bill of $296 (both of which he had paid and was due reimbursement); medical expenses of $2736.94; $3725 for advances made by him; and $14,909.20 for nursing services rendered by his wife to the decedent. In addition, of course, the succession would owe the executor's fee, attorney's fee and court costs. The trial judge observed that while "the debt for nursing services may be seriously in question, there seemed no serious opposition to the other debts listed amounting to something over $7,000.00." This finding of fact is amply supported by the record. Consequently, this sale of succession property to pay debts is sanctioned under the provisions of Article 3261. Opponents' right to question in subsequent proceedings any of the asserted succession charges is adequately protected by law, specifically La.C.C.P. Arts. 3305-3307.
We also agree with the trial judge that the best interest of the succession will be served by selling all of the succession property rather than the undivided interests in some of the tracts. There was no evidence presented at the hearing of an offer by anyone to purchase only a part of the succession property nor was there evidence that such partial sale would realize a sufficient sum to pay the succession indebtedness.
The most serious assertion made by opponents-appellants is that the succession property could be sold for more than the executor was offering.
It is axiomatic that a succession representative stands in a fiduciary relation to the succession. La.C.C.P. Art. 3191.
The requirement of public advertisement and court approval before a representative has the authority to convey succession property at private sale affords the succession and interested parties protection against maladministration by the representative particularly his disposal of succession property for an inadequate consideration. Hamilton v. McKee, 371 So.2d 1115 (La. 1979).
As the executor of his mother's succession, Robert Lawson had a legal obligation to secure the best price reasonably available as consideration for the conveyance of the succession property. The factual question here posed, as raised by opponents-appellants, is whether bona fide offers had been made to purchase that property *995 for a figure in excess of that offered by the executor.
Mrs. Taylor, one of the opponents, testified that Sam Mondello, a farmer who lived in the area, told her he would pay $900 per acre for the property. However, she conceded that their discussion contemplated a sale of the full ownership in the 170 acres rather than the undivided interests owned by the succession. Furthermore, even though Mrs. Taylor referred Mondello to Robert Lawson as the succession representative, there was no evidence that Mondello ever made a formal offer to Lawson for purchase of the property.
Both Mrs. Taylor and her brother, John Lawson (who did not join in the opposition) testified at the hearing that they would pay more than $800 per acre for the succession property. However, as pointed out by the trial judge, these general statements of intent quoted no specific figures or terms nor did these witnesses refer to any concrete arrangements made by them for the financing of this rather substantial purchase price. There was also no evidence that either had extended a formal offer of purchase to the executor.
Under these circumstances, the trial judge correctly concluded that no bona fide offer had been made to purchase the succession property for a sum in excess of that offered by the executor, which was the same figure at which the property was valued on the detailed descriptive list.
For these reasons, we agree with the trial judge that the proposed private sale of the succession property to the executor is in the best interest of the succession. Therefore, he acted properly in dismissing the opposition and we affirm that judgment, at appellants' cost.
NOTES
[1] It appears that decedent owned a ½ interest in some 85 acres, a ¼ interest in some 80 acres, and a 1/58 interest in about 5 acres. The record indicates that decedent's children owned the other undivided interests by virtue of inheritance from their deceased father.
[2] The first petition for authority to sell succession property at private sale was subsequently dismissed on motion of the executor, without prejudice, because of errors in the property descriptions. Another petition seeking the same authority to sell was filed on August 4, 1980, to which the same opposition was filed by Mrs. Marshall and Mrs. Taylor.