CARAWAY, J.,
concurring.
hi concur with the majority’s ruling. By enacting the statute for the prescription of actions to set aside judicially authorized sales in La. R.S. 9:5632, the legislature has recognized a cause of action stemming from a “defective” “legal procedure” underlying a court ordered sale. This statute puts the purchaser on notice that he is vulnerable to rescission of the sale by the heirs whose rights were adversely affected by the flawed and inappropriate procedure. See also La. R.S. 9:5622.
Because the plaintiffs’ claim seeks rescission of the sale of succession property, the cause of action is primarily against the purchasers. The purchasers were not parties to the succession proceeding; yet they directly benefitted from the judgment and were charged with a duty to review the authority for the sale derived from the appropriateness of the procedure employed for the obtainment of the judgment. For the following reasons, I find that the procedure for the private sale chosen by the administratrix, Nunly, was inappropriate and deficient on the face of the succession pleadings alone so as to support a cause of action to nullify the order/judgment and set aside the private sale.
*643 At the time of the sale, the public records revealed several critical facts appearing primarily in the succession pleadings, but also in the conveyance and tax records, which the purchasers were required to take into account. First, Joanna Bias had been dead for such a lengthy period of time that there were no outstanding debts of the succession, only the costs and legal expenses of instituting the proceeding. Second, the entire succession estate consisted of a single asset, an immovable. Third, the conveyance and |2tax records reveal that certain heirs had formally and informally accepted the succession of Joanna Bias by their dealings with the property. La. C.C. art. 957; Southern Natural Gas Co. v. Naquin, 167 So.2d 434 (La.App. 1st Cir.1964), writ denied, 246 La. 884, 168 So.2d 268 (1964); Culligan Water Conditioning, Inc. v. Heirs of Watson, 370 So.2d 129 (La.App. 2d Cir.1979), writ denied, 373 So.2d 525 (La.1979). Indeed, heirs owning a majority interest in the property had been involved in a prior legal proceeding concerning the cutting of timber. Finally, the “Petition to Appoint Administrator,” which opened the judicial action for the succession, expressly revealed that (i) the original heirs of Bias were deceased with their successions having never been opened; and (ii) there were unknown heirs, nonresident hems, and heirs with unknown locations who had inherited interests in Bias’s estate from her children/heirs. This would class those parties as absentees under La. C.C.P. art. 5251 and provide them specific procedural protection under the succession articles in the Code of Civil Procedure.
Upon the institution of the succession proceedings in 2003, two primary and familiar courses of action along with a third and less familiar option were available for Nunly’s consideration under the Code of Civil Procedure. These proceedings may be generally outlined as:
(i) The Administration of the Succession, in accordance with Title III of Book VI of the Code of Civil Procedure (La. C.C.P. arts. 3081, et seq.);
(ii) The Acceptance of the Succession and Placement of Heirs in Possession Without Administration, in accordance with Title II of Book VI (La. C.C.P. arts. 3001, et seq.); and
1 s(iii) The Partition of the Succession in accordance with Title VI of Book VI (La. C.C.P. arts. 3461, et seq.).
The administration of the succession requires the exercise of the administratrix’s powers for the conservation and orderly management of the property and for the necessary liquidation of succession assets to provide appropriately for the debts of the succession or the payment of legacies. La. C.C.P. arts. 3191, 3221, and 3261. All of such powers and the duties of the succession representative are incidental to the primary purpose of the administration for the payment of the debts of the succession. Succession of Roberts, 255 So.2d 610 (La.App. 1st Cir.1971), writ denied, 260 La. 682, 257 So.2d 148 (La.1972). Even with the need for administration, “[i]t shall be the duty of a succession representation to close the succession as soon as advisable.” La. C.C.P. art. 3197.
Without any possibility of a 57-year-old obligation of the decedent and with no immediate need for managerial actions over a tract of timberland, an “administration” of the Bias succession through the private sale of the sole asset of the estate does not fit within the substantive and procedural purposes underlying our succession law for administration. Administration was therefore unauthorized by law, and other legitimate succession procedures could have been conducted to accomplish Nunly’s valid objectives.
*644 In Succession of Shepherd, 454 So.2d 1265 (La.App. 2d Cir.1984), the trial court was presented with a proposal by the executrix for private sale of the decedent’s family home. This court affirmed the trial court’s refusal to authorize the sale, as follows:
|4The approval of an application to sell succession property at private sale rests within the sound discretion of the trial court. There must be good reasons for the sale and it must be in the best interest of the succession. Succession of Pipitone, 204 La. 391, 15 So.2d 801 (1943); Caillouet v. Caillouet, 419 So.2d 536 (La.App. 5th Cir.1982); Succession of Lawson, 408 So.2d 992 (La.App. 2d Cir.1981). In allowing private sales of succession property, the requirement of court approval was included as a safeguard against the inappropriate disposition of succession property. Hamilton v. McKee, 371 So.2d 1115 (La.1979); Estate of LaSalle, 377 So.2d 576 (La.App. 3d Cir.1979).
⅜ ⅜ ⅜ ⅜ $ ⅜
Here, the succession was not opened and the will probated until 17 years after the decedent’s death, when there were no debts and charges to be paid. There would seem to be little or no reason for an administration of the succession or the sale of succession property during the course of an administration, particularly over the opposition of some of the heirs. There would seem to be no reason why the heirs should not be sent into possession of the succession property, to manage or dispose of the property as they see fit.
Id. at 1267-1268. The Shepherd ruling and the First Circuit Court of Appeal’s similar ruling in Succession of Roberts, supra, reveal the courts’ prohibition of a private sale of succession property because of a defective legal procedure in violation of the substantive purpose for the administration of successions.
The second procedure addressed in the succession provisions concerns the acceptance of the succession without administration and the placement of the heirs into possession through an immediate judgment of possession. La. C.C. arts. 3001, et seq. Through a petition for possession pursuant to La. C.C.P. art. 3006, Nunly, as a descendant of Bias and the heir of Bias’s son, Earnest Terrell, would be allowed, in my opinion, to propose that a judgment of possession be entered and that the heirs be recognized without an administration of the succession. This is the action which the plaintiffs now seek in their claim against Nunly and the succession. The final paragraph of |fiArticle 3006 allows a rule to show cause hearing for the court to review the solvency of the succession and to rule that there is no necessity for an administration. Such ruling was a foregone conclusion upon Nunly’s filing of the succession proceeding. Significantly, this process for obtainment of a judgment of possession and the recognition of the heirs of Bias and the subsequent heirship for the many unopened successions of the other family descendants is conducted as a contradictory proceeding with the procedural protection of notice to the absentee heirs, instead of the ex parte procedure which Nunly chose to employ unilaterally.
Most significant, this 2003 succession proceeding occurred a few years after Act 1421 of 1997, which was a comprehensive revision of Louisiana’s succession law. This change in the substantive Civil Code provisions has a direct implication on the procedure for the acceptance of a succession without administration under Title II of Book VI of the Code of Civil Procedure. Previously, according to former Civil Code Articles 1013 and 1032, an unconditional acceptance of the succession without bene *645 fit of inventory or without administration[1] resulted in the heir’s obtaining immediate possession of the succession property but at the cost of becoming personally liable for the debts of the succession. Articles 1013 and 1032, former Civil Code (1870); Hebert v. Brugier, 582 So.2d 838 (La.1991). The first important change in the law limiting liability of the successor/heir Reame with the 1986 enactment of former La. R.S. 9:1421, the substance of which is now contained in new Civil Code Article 1416, which provides as follows:
A. Universal successors are liable to creditors for the payment of the estate debts in proportion to the part which each has in the succession, but each is liable only to the extent of the value of the property received by him, valued as of the time of receipt.
B. A creditor has no action for payment of an estate debt against a universal successor who has not received property of the estate.
La. C.C. art. 1416; Official Revision Comment (b) of 1997. Thus, with the particular facts of this succession involving a single asset estate and no realistic possibility of existing debts of the decedent, a judgment of possession under C.C.P. art. 3061, obtained without administration, or under C.C.P. arts. 3361, et seq., after administration, would make no difference concerning the heirs’ personal liability which was a chief concern[2] historically for the election of an administration of the succession.
Another substantial change in the law resulting from the 1997 Civil Code revision of the law of successions is new Article 962. La. C.C. art. 962. This new provision serves as a complementary provision for the revision’s incorporation of limited liability for accepting heirs. La. C.C. art. 962, Official Revision Comment (a) 1997. The article provides:
In the absence of a renunciation, a successor is presumed to accept succession rights. Nonetheless, for good cause the successor may be compelled to accept or renounce.
|7La. C.C. art. 962. With the new limited liability feature, Official Revision Comment (c) of Article 962 notes “that any interested party, such as a succession representative, or another heir, or legatee, or even a creditor, will have the right to compel the successor to accept or renounce in appropriate circumstances.” Id. Thus, an heir’s filing of a petition for possession and rule to show cause against absentees and other known heirs can now be made. The contradictory proceeding may involve rebuttal of the presumptive acceptance of the succession by all heirs, demonstrate that there is no necessity for administration, and determination of the various inheritance proportions of the heirs, including the absentees, before sending all into possession. La. C.C. art. 962 and La. C.C.P. art. 3006.
In the present case, the opening of the formal succession proceedings in 2003 by the interested party and descendant, Nun *646 ly, could certainly have been conducted in accordance with the procedure for the placement of heirs immediately into possession without administration under La. C.C.P. art. 3006. There were absentee parties caused by the unopened successions of the four original heirs of Bias. There were known heirs who had accepted the Bias succession by their prior actions. There were no debts of the decedent. There was the need for the recognitive significance of a judgment of possession, recognizing the many known and unknown co-owners who had inherited this 250-acre tract. And finally, the changes in the law providing limited liability for accepting heirs and the presumption of acceptance by all hems made an administration of the succession inappropriate. A judgment of possession under the process of La. C.C.P. art. 183006 was an appropriate remedy available for Nunly, which she elected not to pursue.
The final option available for Nunly under the proceedings for Louisiana successions was Title YI of Book VI entitled, “Partition of Successions.” La. C.C.P. arts. 3461, et seq. In this case, the entire succession estate is a single asset. The partition of the Succession of Bias is the partition of a 250-acre tract of land. Under Article 3462,[3] the partition of the succession may occur when the coheirs of the deceased could otherwise be sent into possession without administration under La. C.C.P. art. 3006. As discussed above, the contradictory proceeding under Article 3006 could have been invoked by Nunly and a judgment of possession obtained without administration. Therefore, the further option for a partition of the succession was available to Nunly which would have accomplished the same end which she sought by the private sale. Instead of the many known and unknown coheirs continuing in an unworkable regime of co-ownership of the 250-acre tract, Nunly’s interests and value in the property could be protected through the procedure for the partition of the succession.[4]
| ciNunly’s “administration” of the succession and the private sale of the succession asset effectively denied the other Bias coheirs important procedural rights which are safeguarded under the other two succession procedures discussed above. The private sale of an asset of a succession appropriately under administration might be conducted without actual service of notice of the proceeding on the heirs. La. C.C.P. art. 3282. Even with an absentee heir, Article 3171 may allow the court discretion to choose whether to appoint an *647 attorney for the absentee to receive notice of the proposed private sale. La. C.C.P. art. 3171. The private sale also denies the heir the potentially broader market of purchasers at a public sale and the right of the coheir to purchase the property himself at the public sale. In contrast, the choice of an heir like Nunly to seek a judgment of possession without administration under La. C.C.P. art. 3006 and new La. C.C. art. 962 does require notice to other heirs and the attorney for the absentee heir for the contradictory hearing seeking such judgment. Finally, with the succession representative’s or heir’s action in the succession proceeding for the partition of the succession under Articles 3461 and 3462, service of process and notice, a public sale, and the right to purchase by any heir are insured in the law. La. C.C.P. arts. 3461, 3462 and 4601, et seq. Substantively, the conversion of the succession estate in this case into the sale proceeds accomplished the same result which our law specifically addresses through the partition of succession procedure. See La. C.C.P. arts. 4621, et seq. Yet, Nunly circumvented the protections afforded to her coheirs under that partition procedure.
Imln conclusion, as the 57 years passed after the Bias death, major changes in fact and law occurred. No debts of the decedent could possibly remain in 2003, and the deaths of all of Bias’s original heirs caused a lack of knowledge of certain absentee descendants. The Code of Civil Procedure of 1960 and Act. 1421 of 1997 now allow for a streamlined procedure for the acceptance of the succession without administration, the presumption of such acceptance by the heirs, and the limited liability of heirs for the debts of the decedent. These changes in fact and law made Nunly’s choice for an administration of the succession improper. Yet, our law provided two specific options for succession procedure to accomplish Nunly’s appropriate objective for realizing her inheritance value and ending the family’s unworkable co-ownership regime, which she neglected to use. This inappropriate action in the succession for an “administration” and private sale thwarted the important legal protections for Nunly’s coheirs and was, therefore, under La. R.S. 9:5632, a “defective” “legal procedure” on the face of the succession pleadings which led to the private sale. The purchasers were placed on notice of the defect as a matter of our succession law, substantively and procedurally. During the two-year period set forth in La. R.S. 9:5632, the purchasers are subject to a cause of action to set aside the sale of the succession’s property.

. The phrase "with benefit of inventory” as used in the former Civil Code provisions has been viewed as “legal shorthand” for this avoidance by the heirs of personal liability and the payment of creditors, which under the rules of the Code of Civil Procedure, is the essence of a succession proceeding "with administration.” Karl W. Cavanaugh, Problems in the Law of Succession: Creditors' Rights, 48 La. L.Rev. 1099, 1102 (1988). See also, Katherine Shaw Spaht, Developments in the Law, 1985-1984, Part I, A Faculty Symposium, 47 La. L.Rev. 471 (1986).

. Another critical concern is the insolvency of a succession where although the asset value of the estate exceeds the debts of the succession, the illiquidity of the assets requires the sale of some succession assets to obtain cash for the payment of the debts or legacies.

. La. C.C.P. art. 3462 provides: When a succession has been opened judicially, the coheirs and legatees of the deceased cannot petition for a partition of the succession property unless they could at that time be sent into possession of the succession under Articles 3001, 3004, 3006, 3061, 3361, 3362, 3371, 3372, or 3381.

. Nunly argues in brief that her desire was to receive the value of her inheritance by a share in the proceeds of the sale of the estate property. Yet, she argues that a partition sale under Articles 3461 and 3462 was unavailable because "in order to partition the immovable property by licitation, a Judgment of Possession would have had to have been secured identifying the heirs of Joanna 'Joe' Bias.” This is contrary to Article 3462 with its incorporation of the Article 3006 proceeding involving unknown absentees. Although this lack of identity of all the heirs of Bias remains, Nunly was not hindered in filing her "Final Accounting” in 2004 in which the proceeds of the private sale were proposed to be distributed and effectively partitioned between the known and unknown heirs in a proceeding analogous to the division of the sale proceeds after a partition by licitation under La. C.C.P. art. 4628. The rescission of the private sale will now allow Nunly or any other heir to seek partition of the succession which under the substance of Civil Code Article 807 is a co-owner's undeniable right.