Judgment rendered March 27, 2026.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,771-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

SUCCESSION OF
MIRIAM MANDEL SKLAR

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 540,336-B

Honorable Brady D. O'Callaghan, Judge

* * * * *

| | |
|---|---|
| HARGROVE, SMELLEY & STRICKLAND<br>By: Parker W. Maxwell | Counsel for Appellant,<br>Howard F. Sklar, as<br>Former Independent<br>Executor of the<br>Succession of Miriam<br>Mandel Sklar and<br>Legatee |
| KEAN MILLER, LLP<br>By: William R. Huguet<br>　J. Mark Miller | Counsel for Appellee,<br>Argent Trust Company,<br>as Independent Executor<br>of the Succession of<br>Miriam Mandel Sklar |
| JONES WALKER, LLP<br>By: Miriam W. Henry<br>　Tyler J. Rench<br>　Casey L. Thibodeaux | Counsel for Appellee,<br>Jonathan Simons |

* * * * *

Before STONE, COX, and ELLENDER, JJ.

COX, J., concurring in part and dissenting in part with written reasons.

**ELLENDER, J.**

Howard Sklar, the former independent executor of the estate of his late mother, Miriam Mandel Sklar, and a legatee under her will, appeals a judgment that denied his petition for preliminary injunction to prevent Argent Trust Co., the new independent executor, from liquidating, transferring, or selling two high-value Impressionist paintings, important assets of the estate. For the reasons expressed, we affirm.

## FACTUAL BACKGROUND

Miriam was married to the late Albert Sklar, a pioneer oil producer in northwest Louisiana and president of several businesses. The couple amassed a substantial estate, including the two paintings at issue: Raoul Dufy's *L'entrée du port* and Maurice Utrillo's *Rue Saint Rustique à Montmartre*. Albert died in 1996; Miriam continued as a philanthropist and important presence in cultural circles until her death in 2010.

Miriam had executed a will and codicil that named Howard independent executor of her estate and left specific monetary bequests ($25,000 to $50,000) to named individuals, a large bequest to the Albert & Miriam Sklar Foundation, defined contributions to their grandchildren, and all her interest in an LLC, Sklar Exploration Co., to Howard. She left the residue of her estate to her surviving children (Howard and a daughter, Suzanne), including "household furniture, goods and effects and pictures * * * intended for use or ornamentation of my residence or homestead," with the proviso that "paintings and other objects of art shall be appraised."

# EARLY PROCEDURAL HISTORY

Howard filed a petition for probate in April 2010 and was appointed independent executor. In October 2010 and January 2011, he obtained partial judgments of possession which gave the specific monetary bequests to the named recipients and gave two of Miriam's three vehicles to Howard and the other to Suzanne (with Howard making an equalizing payment). Howard testified that, without getting any similar court approval, he gave Suzanne possession of most of Miriam's jewelry and about seven less-important paintings, while he retained possession of the Dufy and the Utrillo. Howard also formally accepted a portion of his residual bequest, involving certain securities, and renounced another portion. The record then fell silent for almost nine years.

In May 2020, Jonathan Simons, one of Miriam's grandchildren, filed a request for notice and, later, a motion to compel. These argued that, since becoming executor, Howard had never filed a formal accounting or a sworn descriptive list and he, Jonathan, had never received his trust contribution. (He alleged nobody even told him he was a legatee until 2019.) Howard, who had by then relocated to Boulder, Colorado, opposed, but the district court granted the motion to compel.

Howard eventually filed copies of accounting summaries showing the estate was in the red some $459,301 for the year 2020, $362,285 for 2021, and $2,028 for the first quarter of 2022. Jonathan responded with a motion to place all legatees in possession, or for Howard to be removed as executor.[1]

---

[1] Jonathan estimated his share to be $926,322.

Howard conceded the estate suffered from "what can only be described as poor estate planning," and that Miriam's will "did not match her assets." He catalogued many of Miriam's poor financial decisions, especially an "Agency Services Agreement" by which she had agreed to pay a related company, Sklarco LLC, agency and management fees which, at the time of her death, were in arrears of $7.1 million. Despite his initial opposition, Howard voluntarily resigned as executor and, in March 2023, the court appointed Argent the new independent executor.

**ORDER FOR PRODUCTION**

In later 2023, Argent filed motions for contempt and production of documents against Howard, urging his past compliance was "woefully incomplete," failed to identify succession property, revenues, and disbursements, and impeded Argent from performing its duties. Argent alleged Howard had declared the two paintings in his possession were appraised at $1,170,000, but he had refused to deliver them to the estate.[2]

Howard responded that the "distribution of jewelry and artwork to particular legatees" was lawful. He showed that the will named him independent executor, the court approved him as such, and, under that authority, he validly allocated the jewelry and paintings to Suzanne and himself early in the succession. He argued the paintings no longer belonged to the estate, but to him, so he did not have to deliver them.

The matter came to a hearing in November 2023, limited to argument. The court found Howard's failure to provide documents in sufficient detail

---

[2] Argent also alleged Howard had declared the jewelry was appraised at $1,105,500 and demanded its delivery to the estate as well, but the jewelry is not at issue in this appeal.

constituted an invalid accounting; the court held Howard in contempt and imposed a suspended sentence. (The finding of contempt is not at issue in this appeal.) On the motion for production, the court asked, rhetorically, why executors routinely seek a judgment of possession, "if they can just give stuff away?" The property is "not like a set of spoons worth $100," but assets worth $2 million that "could pay off a lot of that $7 million debt." The court orally ordered Howard to return any property in his possession to Argent "for safekeeping," until the court could see a full accounting and determine "if there is money and assets."

The court rendered judgment, dated November 27, 2023, ordering Howard to deliver to Argent all property of the estate, "including artwork and jewelry," within 30 days.

In May 2024, Howard filed an "asset distribution table," listing the artwork as valued at $1,170,000. This table stated the paintings had been "distributed to" Howard and Suzanne shortly after the sale of Miriam's house. At some point, not shown in the record, Howard delivered the Dufy and the Utrillo paintings to Argent.

**PETITION FOR PRELIMINARY INJUNCTION**

In early 2025, Argent's attorneys advised Howard's attorney that Argent "is moving forward with the liquidation of the two pieces of art that are in its possession" and offering Howard the right of first refusal to buy them. The letter listed Argent's appraised value of the Dufy as $250,000 and, of the Utrillo, $150,000, considerably less than Howard's estimates.

After receiving this notice Howard filed, in February 2025, the instant petition for temporary restraining order and preliminary injunction. He alleged Argent was attempting to liquidate the paintings for $350,000

4

despite the pending issues of their ownership; the order of production specified their return was "for safekeeping" only, not for sale; the executor owed a fiduciary duty to preserve and manage succession property; a sale created a risk of undervaluation; no evidence had yet been presented to show that liquidation was required to satisfy the estate's debts; and irreparable harm would result if the paintings were sold. The court granted a TRO and set the matter for hearing. Argent filed an exception of res judicata.

At the hearing, in March 2025, the court quickly rejected Argent's exception of res judicata. On the merits, Howard testified he filed this petition because the paintings were irreplaceable, a family legacy, in the family's collection for 30-40 years, by very famous Impressionist artists, intended to be kept in the family, and had been kept safely in his house until Argent asked for them. He insisted he was not trying to delay the administration of the estate, only to keep the paintings in the estate until the court decided who their rightful owners were.

Questioned by the court, Howard admitted he had sought and obtained judgments of possession to distribute certain cash legacies, Miriam's vehicles, and portions of her securities; however, "on the advice of counsel," he felt no legal authorization was needed to distribute the paintings.

Argent's chief legal counsel, Christopher Holtzclaw, described the "cash flow challenges" facing the estate, with hundreds of thousands of dollars of debt and only $21,000 cash on hand. He confirmed he had given Howard and Suzanne right of first refusal, but it was now Argent's intent to sell the paintings, thereby saving money on storage fees and insurance.

The court ruled orally that Howard met the first requirement for injunctive relief, irreparable harm, but not the second, a prima facie showing

that he would prevail on the merits. The court rejected Howard's position that his "acceptance" of the paintings from himself, as executor, resolved the ownership issue. The court further found "no other resources available" for Argent to satisfy the estate's debts. The court rendered judgment, dated March 13, 2025, denying the preliminary injunction. The judgment also dissolved the TRO it had issued previously.

Howard appealed devolutively, designating four assignments of error, the third of which was withdrawn at oral argument.

## APPLICABLE LAW

A preliminary injunction "shall be issued in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law[.]" La. C.C.P. art. 3601 (A). The only issue to be considered at a hearing on a preliminary injunction is whether the moving party has met its burden of proving that it will suffer irreparable injury, loss, or damage if the injunction is not issued, that it is entitled to the relief sought as a matter of law, and that it will likely prevail on the merits of the case. *Conwill v. Cantrell*, 25-00941 (La. 7/30/25), 415 So. 3d 358; *Chesapeake La. LP v. Bonchasse Land & Timber LLC*, 56,287 (La. App. 2 Cir. 5/21/25), *writ denied*, 25-00788 (La. 10/1/25), 417 So. 3d 573. A writ of injunction is a harsh, drastic, and extraordinary remedy which should issue only where the party seeking it is threatened with irreparable loss or injury without an adequate remedy at law. *Dauphine v. Carencro High Sch.*, 02-2005 (La. 4/21/03), 843 So. 2d 1096; *Terral v. AG Res. Holdings LLC*, 54,156 (La. App. 2 Cir. 3/9/22), 335 So. 3d 1009. The decision to grant or deny a preliminary injunction will not be disturbed absent an abuse of

6

discretion. *Chotin Transp. Inc. v. Harbor Towing & Fleeting Inc.*, 02-0485 (La. 4/24/02), 814 So. 2d 1289; *Terral v. AG Res. Holdings*, *supra*.

Immediately at the death of the decedent, universal successors acquire ownership of the estate and particular successors acquire ownership of the things bequeathed to them. La. C.C. art. 935. However, heirs and legatees do not enjoy *full* ownership or possession rights during the administration of a succession; during administration, those rights are subject to the executor's superior "seizin" rights. La. C.C. art. 938 (B); *Succession of Aymond*, 25-01101 (La. 11/25/25), 422 So. 3d 288. The succession representative "is a fiduciary with respect to the succession, and shall have the duty of collecting, preserving, and managing the property of the succession in accordance with law." La. C.C.P. art. 3191 (A). Further, he must act as a prudent administrator and shall be personally responsible for all damages resulting from his failure so to act. *Id.*; *Succession of Tripp*, 55,496 (La. App. 2 Cir. 5/29/24), 387 So. 3d 939.

The powers and duties of the succession administrator are incidental to the primary purpose of the administration for the payment of debts of the succession. *Robinson v. Nunly*, 46,053 (La. App. 2 Cir. 6/10/11), 69 So. 3d 631; *Smith v. Williams*, 535 So. 2d 959 (La. App. 2 Cir. 1988). A succession representative may sell succession property to pay debts and legacies, or for any other purpose. La. C.C.P. art. 3261.

Under the rules of independent administration, an "independent administrator" means and includes an "independent executor." La. C.C.P. art. 3396 (2). Two provisions of the independent administration law are especially germane to this case. La. C.C.P. art. 3396.15 states:

Except as expressly provided in this Chapter, an independent administrator shall have all the rights, powers, authorities, privileges, and duties of a succession representative provided in Chapters 4 through 12 of this Title, but without the necessity of delay for objection, or application to, or any action in or by, the court.

These rights attach "without the necessity of obtaining court approval to exercise them" and include the power to "sell or exchange movable and immovable property upon such terms and conditions * * * as the independent executor, in his discretion, determines to be proper." La. C.C.P. art. 3396.15, Revision Comments – 2001, Comment (d). In short, under independent administration there is no "requirement of court oversight of his every move as independent administrator." *Succession of Martin*, 56,115 (La. App. 2 Cir. 4/9/25), 408 So. 3d 1200.

Another provision, La. C.C.P. art. 3396.18 (A), states:

Before the succession can be closed, a judgment of possession rendered, and the independent administrator discharged, there shall be filed an inventory or sworn detailed descriptive list of assets and liabilities of the estate verified by the independent administrator.

A 2020 amendment to Art. 3396.18 (A) added the reference to a "judgment of possession" with the intent to clarify the law "by definitively stating that the rendition of a judgment of possession is still necessary" even when a succession is under independent administration. La. C.C.P. art. 3396.18, Comment – 2020; 2020 La. Acts 19 (effective August 1, 2020). Another comment reinforces the notion of certain requirements – a sworn descriptive list, proof of payment of inheritance taxes, *and a judgment of possession*, must be satisfied "before the succession representative may make distribution." La. C.C.P. art. 3396.18, Revision comments – 2001, Comment (e).

8

## DISCUSSION

We will first address Howard's fourth assignment of error, which can be quickly considered and rejected. He urges the court erred in permitting the TRO to be dissolved "by operation of law" and in refusing to maintain the status quo pending adjudication of the underlying ownership and distribution issues. A TRO serves as only a temporary restraint on the defendant until the propriety of granting a preliminary injunction may be decided. *Dauphine v. Carencro High Sch.*, *supra*. By its nature, a TRO is dissolved by operation of law once the trial court grants or denies the preliminary injunction requested by the party in whose favor the TRO was issued. *Id.*; *Powell v. Cox*, 228 La. 703, 83 So. 2d 908 (1955); *Gaumnitz v. Williamson*, 36,177 (La. App. 2 Cir. 8/14/02), 824 So. 2d 531. After the hearing disclosed no basis for injunctive relief, the TRO was indeed dissolved by operation of law. This assignment of error lacks merit.[3]

In his two remaining assignments of error, Howard first urges the court abused its discretion in denying his request for a preliminary injunction by misapplying the legal standard of La. C.C.P. arts. 3601 et seq. and related Louisiana jurisprudence. Second, he urges the court abused its discretion in concluding that Argent, the new independent executor, was free to liquidate the paintings notwithstanding the unresolved question of ownership and prior distribution, and without any evidentiary showing that a sale was necessary to satisfy succession debts or administration expenses.

---

[3] As noted earlier, at oral argument counsel withdrew Howard's third assignment of error, which mistakenly alleged the district court rejected his showing of irreparable injury.

He contends the November 2023 judgment – the order for production – did not resolve the ownership of the paintings. It merely ordered that they be returned to the estate, for safekeeping, not that the independent executor had unrestricted authority to sell them. Hence, there was no finding the paintings belonged to the estate; however, the March 2025 judgment – the denial of preliminary injunction – "acted as if" they were finally adjudicated part of the estate. He further argues he established a substantial likelihood of success on the merits in that Miriam's will gave her children "household furniture, goods and effects and pictures"; as independent executor, he had authority to carry out those bequests in the ordinary course of administration without prior court approval, under La. C.C.P. arts. 3396.1-3396.15. He submits that Argent made no showing of financial necessity to sell the paintings and suggests that neither of the judgments negated his "informal" distribution of succession property. Finally, he argues injunctive relief is necessary to preserve the status quo, given the unique and irreplaceable quality of the paintings and the prospect that selling them would moot the controversy.[4]

On close examination, we find no merit to Howard's well-constructed argument. The best evidence of ownership would have been a judgment of possession distributing the paintings to Howard; however, in his nearly 12 years as independent executor, Howard never sought or obtained such a judgment. He was fully aware of the necessity for a judgment of possession,

_____

[4] In his jurisdictional statement, Howard asserts, "Argent proceeded to liquidate and sell the Raoul Dufy[.]" This fact is not in the record, but, once the act sought to be enjoined has occurred, there is no longer any ground for injunction. *Verdun v. Scallon Bros. Contractors*, 263 La. 1073, 270 So. 2d 512 (1972); *Caddo Fed'n of Teachers v. Caddo Parish Sch. Bd.*, 47,489 (La. App. 2 Cir. 9/26/12), 106 So. 3d 603. He asserts, however, that Argent still has the Utrillo but is now contending it is a counterfeit.

as he obtained three of them early in the proceedings for much less valuable assets. A judgment of possession is clearly required before distribution. La. C.C.P. art. 3396.18 (A). In the absence of this, we cannot accept Howard's factual assertion that he has already been vested with full ownership of the paintings.

Further, the district court easily found the first element for an injunction, a risk of irreparable injury, loss, or damage, but did not find the second, a likelihood that Howard would succeed on the merits. On this record, we perceive no abuse of discretion. During his 12 years as independent executor, Howard complied only superficially with his duties, failing to identify succession property, revenues, and disbursements; he conceded that Miriam's will "did not match her assets." His accounting summaries showed estate debts of over $800,000 for the years 2020, 2021, and early 2021; he also showed the estate owed Sklarco LLC some $7.1 million under the Agency Service Agreement.

At the hearing, Mr. Holtzclaw graphically described the estate's dire financial situation, including costs incurred during Howard's tenure, with payments made to Sklarco under the Agency Services Agreement instead of to the estate to cover its expenses, application of mineral payments to Sklarco instead of to the estate, costs involved in several bankruptcy proceedings, and costs of insuring and storing the paintings. Mr. Holtzclaw testified without contradiction that the estate had only $21,000 on hand. These numbers fully support his professional conclusion that selling the paintings was the best way to generate income. On this record, the district court did not abuse its discretion in finding that Howard was unlikely to

11

prove that it was in the best interest of the estate for him, Howard, to retain the paintings as his own.

Further, we are constrained to agree that, as independent administrator, Argent can exercise the rights, powers, authorities, privileges, and duties of a succession representative "without the necessity of delay for objection, or application to or any action in or by, the court." La. C.C.P. art. 3396.15; *Succession of Martin, supra.* We are familiar with the traditional rule allowing the succession representative to sell succession property for "any other purpose," under La. C.C.P. art. 3261; this did not give the representative carte blanche to sell succession property for any purpose or reason he may deem sufficient.[5] However, under the provisions for independent administration, the independent executor has the greater powers conferred by Art. 3396.15.

At oral argument, much was made of the perception that Argent was treating Howard unfairly: it was badgering him for special assets of his mother's estate to which he had become especially attached but making no similar effort to dislodge valuable jewelry and other paintings from his sister, Suzanne. The implication is that the independent administrator should first pool all the available assets before taking action on the Dufy and the Utrillo. While we recognize the potential for unequal treatment, we cannot overlook the scale of the estate's debts and the large contribution that these two items would make toward stabilizing its finances. Given the ready liquidity of these paintings, we cannot say Argent is breaching its fiduciary duty by pursuing them first, before collecting, preserving, and managing the

---

[5] *Succession of Pipitone*, 204 La. 391, 15 So. 2d 801 (1943); *Succession of Chisholm*, 53,771 (La. App. 2 Cir. 3/3/21), 314 So. 3d 1056.

12

assorted jewelry and other paintings. Considering the undisputed debt of the estate, these items may very well need to be liquidated as well, but they, along with other potential assets, are simply not yet before the court. Notably, Howard has not requested a period accounting from the independent administrator, as he could under La. C.C.P. art. 3396.17, or its removal for cause, as he could under Art. 3396.20. This court will not rule on issues that have not been pled and litigated.

We finally note that the March 2025 judgment did not explicitly authorize Argent to sell the paintings. The purpose of the requested injunction was to prevent their sale, but when this was rejected, the sale could move forward. Given the authority of Art. 3396.15, the testimony of Mr. Holtzclaw at the hearing, and the state of the estate's finances presented in the record as a whole, such authorization would not be an abuse of discretion. If any further emphasis were needed, we would note that Howard did not appeal the judgment suspensively; in short, there was no impediment to the sale of the paintings.

These assignments of error lack merit.

## CONCLUSION

For the reasons expressed, the judgment denying the petition for preliminary injunction and dissolving the TRO previously issued is affirmed. All costs are to be paid by the appellant, Howard F. Sklar.

**AFFIRMED.**

13

**COX, J., concurs in part and dissents in part with written reasons.**

This case has proceeded at a snail's pace for over 16 years. It is undisputed that the original executor, Howard Sklar, did very little to move this case forward, and neglected to exercise his duties as an executor with due diligence and care. As a result, Howard voluntarily resigned and was replaced as executor by Argent Trust Company, which was appointed as the new executor over the estate in March 2023. Because of Howard's failure to provide the necessary accounting, Argent attempted to gain possession of those assets in Howard's control; namely, the two paintings, the *Dufy* and the *Utrillo*.

The will in this case, written by Miriam Sklar, however, specifically bequeathed the paintings, among other assets, to Howard and Suzanne, which would at least make Howard co-owner of the paintings. Howard filed a temporary restraining order and preliminary injunction to prevent the sale of the paintings. He argued that the paintings were invaluable and their sale would result in irreparable injury to the family because the paintings have been in the family's possession for approximately 40 years. The trial court agreed with Howard in this regard; yet, determined he would not be able to make a prima facie showing that he would prevail in his claim and be declared the owner of the paintings. Howard took a devolutive appeal of the judgment.

During oral argument, it was discovered that despite the devolutive appeal, the *Dufy* was nevertheless sold to satisfy the debts of the estate, including Argent's fees and costs. The parties agreed that the original appraisal of the *Dufy* in 2010 listed its value as a little over a million dollars. Moreover, it became clear during oral arguments that at least seven other

1

paintings were given to Howard's sister, Suzanne, and those paintings remain in her possession.

I agree with the majority as it pertains to the *Dufy*, as it has already been sold. That cow has left the barn, and there is no recourse at this time where this Court can address something that has already happened. However, I must respectfully dissent as it pertains to the remaining unsold painting, the *Utrillo*, as well as any other paintings or assets of the estate which were distributed without a judgment of possession. One of the primary functions of an executor is to collect all assets of the estate and pay all debts before distributing any monetary or physical assets to the legatees of the estate in accordance with the decedent's will.

In this case, Argent has not collected what could potentially be valuable assets that were distributed without a judgment of possession to satisfy debts of the estate without a proper appraisal of the remaining paintings and assets in Suzanne's possession. Argent, as the executor, was responsible for collecting all assets distributed without a judgment of possession and should not cherry-pick which assets would best satisfy the debts of the estate without an appraisal of any other assets, which could arguably be highly valued. Argent has not done this and I believe the restraining order should have remained in place until at least all other remaining assets distributed without a judgment of possession could be collected and appraised before determining if a sale of those assets was necessary to satisfy the debts of the estate.

As the trial court correctly noted, irreparable injury would occur if these invaluable family heirlooms were needlessly sold. In this case, one painting has been sold before resolution of this matter could be decided on

2

appeal. Because of this, I must respectfully dissent as to the portion of the majority's opinion that does not grant the restraining order as to the remaining paintings and assets improperly distributed without a judgment of possession.