500 So.2d 393 (1987)
SUCCESSION OF Georgina Blestel TAGLIALAVORE.
No. 86-C-1326.
Supreme Court of Louisiana.
January 12, 1987.
*394 Henry T. Dart, New Orleans, for applicant.
Allen Tillery, Chalmette, for respondent.
CALOGERO, Justice.
In this succession matter the trial judge, whose decision was affirmed in the court of appeal,[1] authorized two co-executors to sell to one of them, at private sale, the succession's undivided one-half interest in a piece of commercial property, where the resulting ownership interests in that property would be continuing co-ownership between the purchasing co-executor and his brother and three sisters. Our writ grant was prompted by the relator's argument that the authorized sale is not in the best interest of the succession because the price is less than fair market value and the sale will not effect a full partition of ownership interests in the commercial property. For the reasons which follow, we determine that the judgments below should be affirmed.
The commercial property in question was part of the community which had been acquired by Alphonse J. Taglialavore, Sr. and Georgina B. Taglialavore. The building houses Tag's Meat Market at 1207 E. Judge Perez Drive in St. Bernard Parish. In 1979, Mr. and Mrs. Taglialavore leased the property to their son, Gene (one of the co-executors in this succession). The lease provided for a rental of $1,500 per month for ten years. The lessee has the option to extend the term for an additional ten years, and he has a right of first refusal (a "first option to purchase" for the same price the lessor may be offered by another). Alphonse, Sr. died in 1981, survived by his wife and their five children, Gene Taglialavore, Jill Taglialavore, Janet Taglialavore Hartman, Joan Taglialavore Fournier, and Alphonse Taglialavore, Jr. The five children inherited the naked ownership of their father's one-half interest in the property; the usufruct thereof went to the surviving spouse. The latter, Mrs. Taglialavore, died in 1982. By will, she left to one child, Alphonse, Jr., only 1/5 of 2/3 of her estate[2] *395 with the remainder of her estate to the other four of her children. She named as co-executors of her estate her children, Gene and Jill.
Whether private sale to the co-executor Gene is to be permitted, or the heirs simply placed in possession of their respective interests in this Succession property, the ownership in the entire piece of commercial property will still be in indivision. The only difference is that in the former instance Gene's undivided interest in the commercial property would be greater.[3]
The co-executors, Gene Taglialavore and Jill Taglialavore, sought to homologate an application to sell the property to Gene Taglialavore at private sale. They testified that they wanted to wrap up the succession by selling the Succession's interest in the piece of commercial property. Two appraisers testified to the value of the entirety of that improved property. One appraiser valued it at $131,200; the other appraiser valued it at $130,000. The co-executors also introduced a written appraisal of $120,000 made by the Central Appraisal Bureau, Inc. in November, 1981, after the death of Alphonse, Sr. Gene's alleged offer to buy the succession's one-half interest was for $60,000. One of the testifying appraisers related that even though he valued the entire property at $130,000, $60,000 for one-half was a fair market price inasmuch as the succession's interest was only an undivided one-half, the property itself was burdened with a lengthy lease, the probability of a sale to an outsider was not great, and financing the purchase by anyone, of such an undivided interest, would be difficult.
Alphonse, Jr. opposed the co-executors' petition for authority to sell immovable property at private sale, objecting to the proposed selling price and to the fact that the property was being sold to his brother. After trial, the judge dismissed the opposition and homologated the application to sell the immovable property at private sale, apparently concluding that the sale was in the best interest of the Succession. See La. Code Civ.Proc.Ann. art. 3261 (West 1961); id. art. 3284 (West Supp.1986); Succession of Shepherd, 454 So.2d 1265,1267 (La.App. 1984). Alphonse, Jr. appealed. The court of appeal affirmed, finding "that adequate justification for the sale of the property was presented, and that appellant failed to prove that the sale would not be in the best interest of the succession." 490 So.2d at 541.
Executors may sell succession property for "any other purpose" (than payment of debts and legacies) "when authorized by the court." La.Code Civ.Proc. Ann. art. 3261 (West 1961). One purpose of such a sale would be to separate the succession interest from the interests of other undivided co-owners. In the case under consideration, an additional effect of such sale is the partitioning of the Succession's interest among the estate's co-owners.[4] Partition of succession property is, of course, a legitimate reason for the sale of such property. Succession of Lewis, 440 So.2d 899, 906 (La.App.1983), writ denied, 443 So.2d 1119 (La.1984); Succession of *396 Pipitone, 204 La. 391, 15 So.2d 801 (1943); Comment, Powers of a Succession Representative, 27 Tul.L.R. 87, 101 (1952). In considering the executor's application for authority to sell succession property, the trial judge must, of course, give due consideration to any opposition[5] and the reasons for same. If he considers the sale to be in the best interest of the succession, he may authorize either the public or private sale of the succession property. La.Code Civ. Proc.Ann. art. 3261 (West 1961); Succession of Pipitone, 204 La. 391, 15 So.2d 801 (1943); Succession of Shepherd, 454 So.2d 1265, 1267 (La.App.1984); Note, Private Sale of Assets for any Purpose of Advantage to the Succession, 18 Tul.L.R. 505, 507 (1944). See also, Caillouet v. Caillouet, 419 So.2d 536, 536-38 (La.App.1982); Succession of Lawson, 408 So.2d 992, 995 (La.App.1981). With respect to public and private sales, neither has priority over the other.[6] Of course the property should be sold for the best price reasonably obtainable.[7]
The primary thrust of Alphonse Taglialavore, Jr.'s argument in opposition is that authorizing the private sale here does nothing more than alter the five heirs' respective ownership interests in the commercial property. He also argues that the proposed sale price for this one-half of the commercial property is lower than if the one-half were conveyed as part of and within a sale of the entire property.
It is, of course, true that the $60,000 appraisal for one-half of the $130,000 property was supported by testimony that the sale value of this succession's half interest suffers if it is to be sold as an undivided one-half rather than as part of the entire commercial property.[8] However, it is not true that the proposed sale does nothing more than cause an altering of the five heirs' respective ownership interests. It also does the following:
(1) It permits the conclusion to Mrs. Taglialavore's succession, with a more complete division of assets, and the placing of legatees in possession of cash rather than additional undivided interests in the commercial property.
(2) It avoids, at least with respect to one-half of the commercial property, having the legatees' interests tied for the next twelve years to a constant price lease with possibly escalating taxes and expenses on this depreciating property.
(3) Considering that the commercial property is still subject to a post-succession judicial partition, the costs of such prospective partition chargeable to the interest of the property's co-owners other than Gene Taglialavore, who is offering to purchase the succession's one-half interest, will be less than it would be were the co-owners placed, along with Gene, in possession of Mrs. Taglialavore's estate.
The principal contrary argument is that, potentially, the succession's one-half interest could generate $65,000 instead of the $60,000 of this proposed sale. The difference to the succession is $5,000 or 7%; the difference to the only legatee who opposed the private sale, Alphonse, is $665 ($5,000 × 13.3%).
The trial judge could well have decided that the considerations noted above *397 offer the promise of monetary savings which offset or more than offset this minor difference in price. And in all events it was established through the testimony of two appraisers that the succession's onehalf interest is in fact to be sold for the best obtainable price for such undivided interest, namely $60,000.
Accordingly, there are justifiable reasons why it is in the best interest of this succession to authorize the proposed private sale, and those reasons outweigh the contrary considerations. "The approval of an application to sell succession property at private sale rests within the sound discretion of the trial court." Succession of Shepherd, 454 So.2d 1265 (La.App.1984). The court of appeal determined that the trial judge had not abused his discretion. We agree with that judgment.
Opponent also complains that Gene has not signed a written agreement to purchase the succession's one-half interest. The reason given at trial, which may not be entirely satisfactory, is that Alphonse, Jr. would not join in executing a written agreement to sell.[9] In all events it is not imperative that there first be in hand a binding offer from a prospective purchaser in order to get court approval to sell succession property at private sale. Succession of Gerber, 205 La. 279, 17 So.2d 329, 330 (1944). Article 3281 of the Code of Civil Procedure[10] contemplates the possibility of securing court approval without first having in hand a binding offer by a prospective purchaser, for it simply says that a succession representative need only file a petition setting forth the description of the property, the price and conditions of, and the reasons for the proposed sale. It then recites, essentially, that only if the executor has in hand an agreement to purchase signed by the purchaser, and by the executor conditionally, should he attach such agreement to the petition. And, while in some circumstances it might be preferable to have an agreement signed by the prospective purchaser before seeking court approval authorizing private sale of succession property, in this case we deem it unnecessary and believe that the succession's best interest is served by homologating the application to sell this property at private sale, as proposed. La.Code Civ.Proc.Ann. art. 3284 (West Supp.1986).

Decree
For the foregoing reasons we affirm the lower courts' judgments rejecting relator's opposition and authorizing the proposed private sale and remand to the district court for further proceedings regarding this succession.
JUDGMENTS OF THE DISTRICT COURT AND THE COURT OF APPEAL AFFIRMED; REMANDED TO THE DISTRICT COURT.
WATSON, J., dissents.
NOTES
[1] Succession of Taglialavore, 490 So.2d 538 (La. App. 4th Cir.1986).
[2] The amount received by Alphonse was less than that received by his brothers and sisters, but more than his legitime. Prior to Mrs. Taglialavore's will dated March 22, 1982, and her succeeding death on March 27, 1982, the Legislature reduced the legitime when there are three or more children from 2/3 to ½ La.Civ.Code Ann. art. 1493 (West Supp.1986), as amended by Act No. 884, § 1, 1981 La.Acts 1989, effective January 1, 1982.
[3] Ownership of this commercial property today is as follows: Succession of Georgina Taglialavore owns ½ Gene, Jill, Janet, Joan, and Alphonse, Jr. each own 1/10. If the heirs were placed in simple possession of the succession's one-half interest, under the will's provisions (21 2/3% to Gene, Jill, Janet and Joan, each, and 13.3% to Alphonse, Jr.), the undivided co-ownership of the entire commercial property would then be as follows: Gene, Jill, Joan and Janet would each own 5/24; Alphonse, Jr. would own 4/24. The co-executors chose instead to attempt to sell the succession's one-half interest to Gene. After that proposed sale, if it is permitted, the ownership would be as follows: Gene would own 3/5; Jill, Janet and Alphonse, Jr. would each own 1/10; each of Joan's two minor children (we are told in brief that Joan died after trial in the district court) would own 1/20.
[4] The succession representative is not really a co-owner. He merely possesses in fact, "by virtue of which [he] has control of the property for purposes of administration." Comment, Seisin in the Civil Law and in Louisiana, 15 Tul.L.R. 576, 589 (1941).
[5] La.Code Civ.Proc.Ann. arts. 3281, 3282, 3284 (West 1961 and Supp.1986).
[6] See id. arts. 3261-88; Succession of Mangle, 452 So.2d 197, 203 (La.App.), writ denied, 452 So.2d 1176 (La.1984).
[7] Succession of Irving, 436 So.2d 1263, 1265 (La. App.), writ denied, 442 So.2d 452 (La.1983); Succession of Lawson, 408 So.2d 992, 994 (La. App.1981).
[8] For purposes of this opinion we assume that the property is worth $130,000 because the appraisers so testified. However, it is worth noting that the trial judge, familiar with conditions in his parish (an appraiser testified as to the bad economic conditions in St. Bernard Parish) could well have concluded that the value of this property had not increased over the 1981 CAB appraisal of $120,000. Value is a question of fact, and the weight to be given to expert testimony is within the discretion of the trial court. Middle Tennessee Council, Inc. v. Ford, 274 So.2d 173, 177 (La.1973); Succession of Lewis, 440 So.2d 899, 905 (La.App.1983), writ denied, 443 So.2d 1119 (La.1984).
[9] There is no reason why all of the legatees have to sign such an agreement. It is sufficient that the co-executors, or one of the two co-executors, and prospective purchaser do so.

As an aside, although La.Code Civ.Proc.Ann. art. 3194 (West 1961) prohibits a succession representative from contracting with the succession of which he is a representative, article 3195 excepts "[a] co-owner with the deceased, with respect to the property owned in common" and "[a]n heir or legatee of the deceased." Id. art. 3195(3)-(4) (West Supp.1986). Because Gene fits within these exceptions, he is not prohibited from contracting with the succession even though he is a co-executor.
[10] La.Code Civ.Proc.Ann. art. 3281 (West Supp. 1986).