CRAIN, J.
|2In these consolidated cases involving the successions of Fannie Canale Cannata and Vincent Cannata, Guy Cannata appeals a judgment of possession and challenges multiple rulings by the trial court. Guy Cannata has additionally filed with this court a peremptory exception of lack of subject matter jurisdiction, alleging that Vincent Cannata was not domiciled in St. Mary Parish, and therefore the trial court and this court lack subject matter jurisdiction over his succession. We overrule the exception, vacate an order removing and replacing the independent administrators, and affirm all other judgments and orders.
FACTS
Fannie Canale Cannata died testate in 2002, survived by her husband, Vincent Cannata (Mr. Cannata), and their three children, Joan Ann Cannata Blakeman, Guy Thomas Cannata, and Vincent Anthony Cannata.[1] Mr. Cannata opened Mrs. Cannata’s succession in St. Mary Parish and was appointed independent administrator of her estate. Mr. Cannata died testate in 2006, survived by Joan Ann, Guy, and Vincent. Guy opened Mr. Can-nata’s succession in St. Mary Parish, and Guy, Joan Ann, and Vincent were appointed independent coadministrators of Mr. Cannata’s estate. In accordance with Mrs. Cannata’s will, Guy was appointed successor independent administrator of her estate.
Since 2006, Guy, Joan Ann, and Vincent have engaged in contentious litigation over their parents’ successions and estates. The trial court consolidated the successions of Mr. and Mrs. Cannata with a suit on a promissory note filed by Cannata’s Super Market, Inc., against Guy, as independent administrator of Mr. Cannata’s succession. In 2007, the trial court removed the Cannata children as independent co-administrators of Mr. Cannata’s succession, removed Guy as independent administrator of Mrs. Cannata’s succession, and replaced them with a |3court-appointed administrator. In 2009, the promissory note suit was settled. Thereafter, the administrator, together with Joan Ann and Vincent, filed a motion to determine jurisdiction, wherein they alleged that Guy had filed a petition to probate Mr.'Cannata’s last will and testament in Orleans Parish. After an evidentiary hearing, the trial court determined that Mr. Cannata was domiciled in St. Mary Parish at the time of his death and that Mr. Cannata’s succession was properly filed in St. Mary Parish. A judgment of possession in the consolidated cases was ultimately rendered in 2013. Guy now appeals “all judgments, orders, [and] decrees rendered in the three cases.”
JURISDICTION
In his first two assignments of error and in an exception filed with this court, Guy asserts that subject matter jurisdiction is lacking in this case because Mr. Cannata was not domiciled in St. Mary Parish at the time of his death, and therefore the trial court lacked jurisdiction over Mr. Cannata’s succession.
Louisiana Code of Civil Procedure article 2811 provides that “[a] proceeding to open a succession shall be brought in the district court of the parish where the deceased was domiciled at the time of his death.” The venue provided in Article 2811 establishes jurisdiction and cannot be waived. See La.Code Civ. Pro. art. 44(B); Succession of Caprito, 468 So.2d 561, 563 (La.1985); Succession of Guitar, 197 So.2d 921, 924 (La.App. 4 Cir.1967). Actions taken by a court without jurisdiction are *361 null and void. See La.Code Civ. Pro. art. 3; Gisclair v. Louisiana Tax Commission, 09-0007 (La.6/26/09), 16 So.3d 1132, 1133 n. 1; Succession of Guitar, 197 So.2d at 924.
A person’s domicile is the place of his habitual residence; however, the concepts of domicile and residence are not synonymous. La. Civ.Code art. 38; Russell v. Goldsby, 00-2595 (La.9/22/00), 780 So.2d 1048, 1051. A person can |4have several residences, but only one domicile. La. Civ.Code art. 39; Landiak v. Richmond, 05-0758 (La.3/24/05), 899 So.2d 535, 542. Domicile essentially consists of two elements, residence and an intent to remain. Landiak, 899 So.2d at 542.
A person retains his domicile until he acquires a new one. La.Code Civ. Pro. art. 44. A person changes his domicile when he moves his residence to another location with the intent to make that location his habitual residence. La. Civ.Code art. 44. Proof of intent to change domicile depends on the circumstances. La. Civ. Code art. 45. A party seeking to show that a person’s domicile has changed must overcome the legal presumption that it has not changed by positive and satisfactory proof of establishment of a domicile as a matter of fact with the intention of remaining in the new place and of abandoning the former domicile. Russell, 780 So.2d at 1051; see also January v. January, 15-67 (La.App. 3 Cir. 6/3/15), 165 So.3d 423, 426; Thebeau v. Smith, 49,665 (La.App. 2 Cir. 9/8/14), 148 So.3d 233, 239.
A sworn declaration of intent recorded in the parishes from which and to which a person intends to move may be considered as evidence of intent to change domicile. La. Civ.Code art. 45. Absent such a formal declaration, it is incumbent on courts to weigh the evidence presented to determine domicile in fact. Landiak, 899 So.2d at 543. Circumstances indicating establishment of a domicile include where a person sleeps, takes his meals, has established his household, and surrounds himself -with his family and the comforts of domestic life. Succession of Thompson v. Harrington, 502 So.2d 229, 231 (La.App. 3 Cir.1987). Relevant considerations include voter registration, homestead exemptions, vehicle registration. records, driver’s license address, statements' in notarial acts, and | .^evidence of where most of a persons’ property is housed. See Landiak, 899 So.2d at 543-44.
Domicile is an issue of fact to be determined on a case-by-case basis. Pattan, 669 So.2d at 1238. As in any case, the trial court’s factual findings will not be disturbed on appeal unless they are clearly wrong or manifestly erroneous. See Pattan, 669 So.2d at 1238. This requires the reviewing court to review the record in its entirety, not to determine whether the trier of fact was right or wrong, but to determine whether the fact finder’s conclusion was reasonable. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). If the trial court’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that it would have weighed the evidence differently. Pattan, 669 So.2d at 1239.
The parties do not dispute that Mr. Can-nata was domiciled in St. Mary Parish during his marriage to Mrs. Cannata. In fact, Mr. Cannata declared that his domicile was St. Mary Parish in his last will and testament. The succession administrator, together with Joan Ann and Vincent, contend that Mr. Cannata maintained that domicile until his death, and therefore the 16th Judicial District Court in St. Mary Parish had jurisdiction over Mr. Cannata’s succession. Guy commenced Mr. Canna- *362 ta’s succession in St. Mary Parish but now alleges he did so in error because Mr. Cannata had changed his domicile to Orleans Parish before dying. ■ As the party seeking to show that Mr. Cannata’s domicile was changed, Guy bore the burden.of overcoming the legal presumption that Mr. Cannata’s domicile remained in St. Mary Parish by presenting positive and satisfactory proof that at the time of his death Mr. Cannata resided in Orleans Parish with the | ^intention of remaining there and intended to abandon his former domicile.[2] See Russell, 780 So.2d at 1051.
Guy submitted his own stipulated testimony that Mr. Cannata began to change his domicile to Orleans Parish in 2002, after Mrs. Cannata died. Guy submitted documentation showing that in May 2008, Mr. Cannata entered into a residency agreement with Martin’s Landing at Lam-beth House in Orleans Parish. The residency agreement describes Martin’s Landing as the assisted living and health center part of Lambeth House, a licensed continuing care retirement community. In August 2004, Mr. Cannata executed a codicil to his last will and testament, wherein he set forth that he was residing at Martin’s Landing in Orleans Parish. This was also shown in an unofficial driving record reflecting that Mr. Cannata resided in Orleans Parish, and financial and other documents showing that Mr. Capna-ta received mail at the Orleans Parish address, including a witness subpoena. A resident statement shows charges incurred by Mr. Cannata during July 2005, for services received at Lambeth House, including meals and dry cleaning, as well as the contracted monthly residency rate. Guy argued that Mr. Cannata was trying to sell his residence .in St. Mary Parish, which is the reason he maintained that property. In support, Guy offered a-, listing and marketing agreement with a realtor. Guy argued that Mr. Cannata occasionally returned to the home in St. Mary Parish, but asserted that Mr. Can-nata had not slept there for years prior to his death. Guy contends that the evidence clearly shows that Mr. Cannata lived his life in Orleans Parish for several years before his death.
In further support of his argument that Mr. Cannata changed his domicile to Orleans Parish, Guy offered evidence that Mr. Cannata made arrangements for both he and Mrs. Cannata to be buried in Orleans Parish. Mr. Cannata also had the |7remains of his predeceased son moved from St. Mary Parish to Orleans Parish for reburial.
The succession administrator, Vincent, and Joan Ann maintained that Mr. Canna-ta did not change his domicile and therefore his domicile remained in St. Mary Parish. They argued that this was evidenced by Mr. Cannata’s last will and testament, which recited that he was domiciled in St. Mary Parish, and the codicil he executed in 2004, which stated that he was residing in Orleans Parish, but left in full force and effect his earlier declaration of domicile. They additionally reference the petition that Mr. Cannata filed in 2003 to open Mrs. .Cannata’s succession, wherein he represented that he was domiciled in St. Mary Parish, as well as an “Estimativé and Descriptive List of Assets and Liabilities” that Mr. Cannata prepared for Mrs. Cannata’s succession in April 2004, in which Mr. Cannata set forth that he was a resident of St. Mary Parish. They submit *363 ted evidence, that in 2004 Mr. Cannata was registered to vote in St. Mary Parish, although that document showed that Mr. Cannata had not voted since 2000. They showed that Mr. Cannata paid taxes on property in St. Mary Parish in December 2005. They also submitted evidence showing that Mr. Cannata maintained his home in St. Mary Parish, which included making payments in 2005 for electricity, gas, and cable, for upkeep of the swimming pool, for the home’s security system, for. air conditioning repairs, and for renewal of his homeowner’s insurance policy. Vincent and Joan Ann did not testify at the hearing, but the parties stipulated that if they were called to do so, they would testify that their father was domiciled in St. Mary Parish and intended to maintain his domicile iri St. Mary Parish.
The trial court considered the totality of the circumstances and determined that Guy failed to meet his burden of proving that 'Mr. Cannata changed his domicile. 'The trial court acknowledged that wealth and resources can allow a 18person to have a number of residences without changing their domicile and opined 'that such was the case with Mr. Cannata. The trial court was not persuaded that the cemetery arrangements evidenced a change of domicile. Additionally, the' trial court noted that 'Mr. Cannata was a savvy businessman with several lawyers at his disposal, and found it particularly meaningful that in executing the codicil to his will, Mi*. Cannata indicated that -he was residing, not domiciled, in Orleans Parish.
Mr. Cannata’s domicile is presumed to be St. Mary Parish. The' record reflects that Mr. Cannata established a residence in Orleans- Parish at Lambeth House. However, the record also reflects that Mr. Cannata maintained significant connections to St. Mary Parish. He maintained a home there, claimed a homestead exemption, paid taxes on the property, and was registered to vote in St. Mary Parish. Also, while he resided in Orleans Parish, Mr. Cannata represented in legal documents that his domicile was St. Mary Parish and never formally declared his domicile to be anywhere other than St. Mary Párish. Considering the 'record in its entirety, we cannot conclude that the trial court was manifestly erroneous in its determination that Mr. Cannata was, at the time of his death, domiciled in St. Mary Parish. The trial court’s factual finding is reasonably supported by the record and therefore cannot be disturbed on appeal. Accordingly, we find no merit in these assignments of error and overrule Guy’s exception of subject matter jurisdiction.
CONSOLIDATION
In his third assignment of error, Guy essentially argues that consolidation of the two successions was improper because all three representatives for Mr. Cannata’s succession did not join in the motion seeking consolidation.[3]
*364 ^Louisiana Code of Civil Procedure article 3192 pertinently provides that “[i]f there are several succession representatives, all action by them shall be taken jointly.” Guy interprets Article 3192 to prohibit any action by less than unanimous consent of the succession representatives. This court rejected a similar argument in Guaranty Bank & Trust Co. v. Quad Drilling Corp., 273 So.2d 717, 718 (1973), explaining that Article 3192 prohibits one representative from binding the others for his. own malfeasance, but does not prohibit less than all representatives from acting on behalf of the estate in the event one refuses. In that case, it was determined that one executor had the right to perfect an appeal. Guaranty Bank & Trust Co., 273 So.2d at 718. In this case, we similarly find no error in the trial court’s consolidation of the successions on motion of only two of the three succession representatives.
The consolidation of cases is a procedural convenience designed to avoid multiplicity of actions and does not cause a case to lose its status as a procedural entity. Ricks v. Kentwood Oil Co., Inc., 09-0677 (La.App. 1 Cir. 2/23/10), 38 So.3d 363, 366; see also La.Code Civ. Pro. art. 1561 and In re Miller, 95-1051 (La.App. 1 Cir. 12/15/95), 665 So.2d 774, 776, writ denied, 96-0166 (La.2/9/96), 667 So.2d 541. As a general rule, a trial court has wide latitude with regard to the consolidation of suits pending in the same court and its decision in that regard will not be disturbed absent an abuse of discretion. Rockett v. Neuport, 10-1311 (La.App. 1 Cir. 3/25/11), 2011 WL 1260069, p. 2; Francois v. Gibeault, 10-0180 (La.App. 4 Cir. 8/25/10), 47 So.3d 998, 1002. Consolidation is appropriate where the court finds that common issues of fact and law predominate and that judicial! ineconomy will be served by the consolidation. See Rockett, 2011 WL 1260069, p. 2; see also La. Code Civ. Pro. art. 1561. Considering the common issues of fact and law presented in these successions, the trial court did not abuse its discretion in ordering their consolidation.
REMOVAL OF SUCCESSION REPRESENTATIVE
In his fourth assignment of error, Guy contends that the trial court erred in recalling the letters of administration issued to him as independent administrator of Mrs. Cannata’s succession and as a co-independent administrator of Mr. Canna-ta’s succession. In a related assignment of error number five, he asserts that the trial court eri’ed in appointing Dean Wattigny as the replacement administrator.
The trial court removed and replaced the representatives in both successions in a judgment signed on May 11, 2007. We first note that this court recently held that a judgment appointing or removing a succession representative is a final judgment subject to immediate appeal. In re Succession of LeBouef 13-0209 (La.App. 1 Cir. 9/9/14), 153 So.3d 527, 533 (en banc). Guy attempted to appeal the May 11, 2007 judgment shortly after it was signed; however, this court, in an action taken prior to Succession of LeBouef granted a motion to dismiss the appeal on the grounds that the judgment was interlocutory and not appealable. See In Re: Succession of Cannata, 07-2025, 07-2026, 07-2027 (La.App. 1 Cir. 3/24/08). Guy also sought review of the judgment through a writ application filed with this *365 court that, in pertinent part, was denied. See Succession of Cannata, 07-1632 (La.App. 1 Cir. 8/24/08), writ denied, 08-0864 (La.6/6/08), 983 So.2d 925. Guy now seeks review of the judgment as part of this appeal of the judgment of possession and the homologation of the final account. We recognize that under Succession of LeBouef the judgment removing Guy as a succession representative is now considered a final, appealable judgment and that the present appeal was filed after the expiration l^of the appeal delays for that judgment; however, under the unique circumstances of this case, we find that Guy properly preserved his right to have the judgment reviewed by this court.
Turning to the merits of the appeal, Guy asserts that the trial court did not follow the proper procedure for removing and replacing him as a succession representative, because no party filed a rule to show cause requesting such relief and no contradictory hearing was held to determine whether any grounds for removal were present.
The procedure for removal of a succession representative is governed by Louisiana Code of Civil Procedure articles 3182 and 3396.20. Article 3182 provides, in pertinent part, “The court on its own motion may, and on motion of any interested party shall, order the succession representative sought to be removed to show cause why he should not be removed from office.” Similarly, Article 3396.20 authorizes the court “on motion of any interested person, after a contradictory hearing” to remove an independent administrator for any of the reasons provided by applicable law. In a contested proceeding, these articles require a rale to show cause and a contradictory hearing to remove a succession representative. See Succession of Koch, 379 So.2d 1080, 1083 (La.1980); Succession of Cucchero, 97-0771 (La.App. 1 Cir. 4/8/98), 711 So.2d 402, 403.
No rule to show cause was issued directing Guy to appear and show cause at a contradictory hearing why he should not be removed as a succession representative. The trial court issued its ruling removing and replacing all of the succession representatives at a hearing scheduled in connection with other motions filed by the parties. After the trial court expressed a desire to get the proceeding in a posture where the parties believed they were “on equal footing,” the court stated that it was going to “remove all administrators, recall all letters of administration | 1gand appoint a special neutral administrator who has experience in this area of the law.” When Guy’s counsel objected and noted that no request had been filed to remove the administrators, the trial court responded, “I understand your posture. And you’re right. Nothing has been filed to ask for it. It’s the Court’s own order, based on the nature of these events, as well as the nature of the events post my specific involvement.”
Vincent and Joan Ann point out that they did file a motion “seeking court intervention” in the administration of Mr. Can-nata’s succession, which was set for hearing that same day. However, that motion did not request that the coindependent administrators of Mr. Cannata’s succession be removed. Rather, the pleading alleged that the co-independent administrators were deadlocked, and requested that the court intervene “in order that this proceeding may move forward in a prudent and orderly fashion with a view to completion.” The associated order directed the co-independent administrators to appear and show cause “why the relief prayed for in the foregoing motion, or other relief deemed reasonable and appropriate in the discretion of this court, [should not] be granted.”
*366 We do not construe this motion and order as sufficiently placing Guy on notice that he had to appear and show cause why he should not be removed as a coindepen-dent administrator of Mr. Cannata’s succession and be removed as the executor of Mrs. Cannata’s succession. The motion requested only that the coui't intervene to facilitate the conclusion of Mr. Cannata’s succession, and neither the motion nor the order made any reference to the administration of the succession of Mrs. Cannata. Absent that required notice and contradictory-hearing, the trial court erred in removing and replacing the-succession representatives. To the extent the May 11, 2007 judgment removed and replaced the succession representatives, it must be vacated.
| iSHowever, the effect of this ruling is limited by Louisiana Code of Civil Procedure article 2122, which provides that a judgment rendered on appeal vacating a judgment or order of the trial court appointing a legal representative does not invalidate any of his official acts performed prior to the rendition of the judgment of the appellate court. See also La.Code Civ. Pro. arts. 2974, 3182.- Under these articles, the trial court’s order appointing the administrator, even though improper, is valid and has effect until the administrator’s removal from office.- See Succession of Koch, 379 So.2d at 1083. Consequently, all actions undertaken by the court-appointed administrator to administer and conclude the successions remain in effect and are not rendered invalid by this ruling. We will therefore proceed with review of the remaining assignments of error asserted by.Guy. .
AMOUNT OF ADMINISTRATOR’S BOND
In his sixth-assignment of error, Guy contends that the trial court erred in setting the bond for the court-appointed administrator at .only $13,000.00. Although we vacated the order appointing the administrator, we nevertheless address this assignment of error because the-administrator performed duties in his official capacity, and the faithful performance of those duties is secured by the administrator’s bond.
The amount of the administrator’s bond is governed by Louisiana Code of Civil- Procedure article 3151, which provides:
Except as otherwise provided by law, the person appointed administrator shall furnish security for the faithful performance of his duties in an amount exceeding by one-fourth the total value of all property of the succession as shown by the inventory or descriptive list.
The court may reduce the amount of this security, on proper showing, whenever it is proved that the security required is substantially in excess of that needed for the protection of the heirs and creditors.
| uThe second paragraph of this article authorizes the trial court, in its discretion, to set a lower amount for -security than the amount required by paragraph one, when it is shown that the lower amount is “sub: stantially in excess of that needed” to protect the interest of the heirs and creditors. Succession of Montgomery, 452 So.2d 297, 299 (La.App. 2 Cir.1984).
In this proceeding, the necessity of the administrator’s bond first arose in 2008, when this court, acting on a writ application, found, that the trial court erred in appointing the administrator without requiring a bond. See Succession of Cannata, 07-1632 (La.App. 1 Cir. 3/24/08). Following remand, the administrator pré- *367 pared a motion stating that the successions had approximately $743,000.00 in cash and investments. The administrator, who is an attorney, confirmed that he had malpractice insurance “of at least $1 million” and that counsel for Vincent and Joan Ann agreed that a minimal commercial bond in the amount of $13,000.00, at a cost to the succession of only $100.00, would be adequate to protect the heirs and creditors. The administrator further stated that he had received no response from Guy.
This motion was faxed to the trial court and all counsel on October 24, 2008. The record contains no evidence that Guy objected to the motion at that time, nor any time thereafter until almost three years later in April 2011, when Guy filed a motion seeking to- have the .administrator removed for failing to post a bond. Apparently the administrator’s 2008 bond motion and order could not be found in the record, and there was no evidence that the bond had been posted. ,
■ At the hearing of Guy’s motion, the trial court stated that it was certain.that the bond motion had been filed and the order signed, without objection, in 2008. The exhibits at. the hearing included a facsimile copy of the bond motion and. a cover sheet indicating that it was faxed to the court and opposing counsel on [^October. 24, 2008. When the trial court expressed its intention to deny Guy’s motion to remove the administrator and to sign another order setting the same bond, Guy’s counsel requested that the court “fix the bond at the amount required by law, and not just at $13,000.00.” The trial court again emphasized that the amount of the bond was. addressed in 2008, as reflected in the October 24, 2008 facsimile, and that no party objected to a bond in the amount of $13,000.00. In light of those prior actions,1 tha trial court ruled that -the amount of the bond. would remain $13,000.00. Shortly thereafter,, the administrator filed a commercial surety bond in that amount.
The evidence and the record establish that in 2008 the administrator requested a reduced bond of $13,000.00, stating that he had malpractice insurance coverage of at least $1,000,000.00. No heir or creditor objected to the request, and the trial court recalled signing an order at that time setting the bond at $13,000.00. The request and order were apparently- not. filed or were misplaced; however, there is no. dispute that the original request for the reduced bond was unopposed. Under these circumstances, the trial court did not abuse its -discretion in maintaining the bond amount at $13,000.00 and refusing Guy’s request that the bond be set at a greater amount. This assignment of error has no merit.
THE PROMISSORY NOTE
Guy urges three assignments of error (numbers seven, eleven, and twelve) related to a promissory note in the amount of $225,088.36, which was executed by Mr. Cannata in fávor of Cannata’s Super Market, Inc, (CSM).;" CSM sought to collect on the note by filing a' proof of claim in Mrs. Cannata’s succession and by instituting the third of these consolidated suits against Guy, as independent executor of Mr. Can-nata’s succession.[4] The succession administrator asserted a reeohventional derhand in the promissory note suit, alleging that CSM owed’ the 11(isuccession- certain amounts based on the consulting agreement Mr. Cannata entered with' CSM in anticipation of his retirement. The succession administrator and CSM agreed to compromise the issues raised, in the suit on the note and the reeonventional demand. *368 Over Guy’s objection, the trial court approved the compromise and authorized the succession administrator to compromise the claims, reserving approval of attorney fees owed under the note. The trial court later signed a judgment awarding attorney fees in the amount of $24,212.50 to CSM’s attorney. In this appeal, Guy complains that he was denied his right to discovery with regard to the note and that the trial court erred both in approving the compromise and in awarding attorney fees.
On Guy’s motion, the trial court certified its September 25, 2009 judgment, which authorized the administrator to compromise the claims, as final, after an express determination that there was no just reason for delay. Guy did not timely appeal the designated final judgment. Therefore, that judgment is final and is not reviewable in this appeal. Cf. Graham v. Southern Pacific Transp. Co., 619 So.2d 894, 898 (La.App. 3 Cir.), writ denied, 625 So.2d 1044 (La.1993). Consequently, Guy’s complaints that he was improperly denied discovery regarding the promissory note are moot.
After rendition of the judgment authorizing the succession administrator to compromise the suit on the note and the re-conventional demand, the only remaining issue was the amount of attorney fees owed. The trial court awarded attorney fees by judgment dated April 15, 2010. Because that judgment resolved all remaining issues in the promissory note suit, it was final. See La.Code Civ. Pro. art. 1841. The April 15, 2010 judgment was not timely appealed and, therefore, it is not reviewable in this appeal.
|17TABLEAU OF DISTRIBUTION
In his eighth and ninth assignments of error, Guy contends that the trial court erred by approving the tableau of distribution submitted by the court-appointed administrator. In addition to his jurisdictional argument, which this court has already rejected, Guy asserts three grounds for vacating the judgment approving the tableau: (1) the tableau was filed by an improperly appointed administrator who had not yet posted security; (2) the tableau failed to properly “rank” a legacy to Guy;’ and (3) the tableau failed to provide reasonable compensation for legal services provided by an attorney and a law firm in connection with the succession. Guy also complains that the trial court improperly signed an amended judgment pertaining to the tableau.
Before addressing the merits of these arguments, we note that a judgment ho-mologating a tableau of distribution is an appealable judgment pursuant to Louisiana Code of Civil Procedure article 3308, and the appeal must be filed within the delays provided by Louisiana Code of Civil Procedure article 2123. See La.Code Civ. Pro. art. 3308, Official Revision Comments-1960, comment (a). After the judgment was rendered in the present ease, Guy timely filed a motion for new trial that was denied by the trial court on September 20, 2011. The present appeal was filed over two years later; however, the record on appeal contains no indication that the clerk of court mailed notice of the signing of the order denying the motion for new trial in accordance with Louisiana Code of Civil Procedure articles 1914(C) and 2123(A). Because the record does not indicate the critical date from which the appeal delay commenced, we consider the appeal of this judgment to be timely. See Matrix Construction Co., Inc. v. Patel, 07-0153 (La.App. 1 Cir. 12/21/07), 2007 WL 4465676, n. 5.
IirAs previously recognized herein, the trial court failed to follow the proper procedure for removing and replacing the succession representatives; howev *369 er, that finding does not invalidate the actions undertaken by the court-appointed administrator after his appointment, including the filing of the tableau of distribution. See La.Code Civ. Pro. arts. 2122, 2974, and 3182; Succession of Koch, 379 So.2d at 1083. Similarly, the filing of the tableau of distribution is not rendered invalid because the administrator failed to post security until after the tableau was filed. The failure to furnish security, for that matter, does not even mandate the removal of the succession representative, because the trial court, in its discretion, may grant additional time for the representative to post the required security. See La.Code Civ. Pro. arts. 3181 and 5125; In re Succession of Daigle, 01-1777 (La.App. 1 Cir. 6/21/02), 822 So.2d 83, 87, writ denied, 02-2389 (La.11/22/02), 829 So.2d 1045; Succession of Orlando, 531 So.2d 546, 549 (La.App. 5 Cir.), writ denied, 533 So.2d 361 (La.1988). Guy’s argument that the tableau of distribution was not validly filed is without merit.
Guy next argues that the tableau did not give proper priority to a legacy to him from Mr. Cannata. Guy’s legacy appears in a codicil, whereby Mr. Cannata amended Article VI of his January 22, 1982 will that, as originally drafted, bequeathed “the residue” of Mr. Cannata’s estate to his three children in equal portions. The codicil amended that provision to “make my universal legacy of one-third to each of my three children, Joanne, Guy and Vincent, subject to the special legacy to my son Guy.” The legacy to Guy was then specified to be an amount equal to 50% of the salary and benefits of the highest paid executive for Cannata’s Super Market during certain years.
ImMr. Cannata also left bequests to Vincent and Joan Ann. In his January 22, 1982 will, Mr. Cannata bequeathed $100,000.00 to Vincent; and in the subsequent codicil, he bequeathed certain movable property to Joan Ann.
The tableau of distribution filed by the administrator and approved by the trial court sets forth the following legacies:
1. Special Legacy to Joanne Cannata Blakeman
2. Special Legacy to Vincent Cannata up to $100,000.00.
3. Universal legacy to three children subject to legacy to Guy Cannata.
Under this listing, the cash legacy to Vincent received priority over the legacy to Guy, which would be satisfied out of the residual estate. According to Guy, Mr. Cannata’s succession did not have sufficient assets to fully satisfy the legacies to both Vincent and Guy, so Guy received only partial satisfaction of his legacy. Guy argues that the two legacies should have received equal priority and, therefore, satisfied on a pro rata basis from the available assets.
In determining the priority for the payment of legacies, the court should look first to the testator’s will to determine whether he expressly declared a preference. See La. Civ.Code art. 1599. In interpreting a will, the function of the court is to determine and carry out the intention of the testator if it can' be ascertained from the language of the will. In re Succession of Templet, 07-0067 (La.App. 1 Cir. 11/2/07), 977 So.2d 983, 986, writ denied, 07-2329 (La.2/1/08), 976 So.2d 720. The intent of the testator controls the interpretation of his testament. La. Civ.Code art. 1611(A). If the language of the testament is clear, its letter is not to be disregarded under the pretext of pursuing its spirit. La. Civ.Code art. 1611(A). The first and natural impression conveyed to the mind on reading the will as a whole is entitled to great weight. The testator is assumed to be conveying his ideas to the best of his *370 ability so as to be correctly understood at first view. In re Succession of Templet, 977 So.2d at 986.
lanMr. Cannata’s will, as amended, sets forth a legacy to Vincent of $100,000.00 and a legacy of movable property to Joan Ann. The will then concludes by bequeathing the remainder of his estate to his three children, in equal portions, “subject to” a legacy to Guy. The will thus distinguishes Guy’s legacy by characterizing it as an' exception to the universal legacy. By carving Guy’s legacy out of the universal legacy, Mr. Cannata expressed a preference that Guy’s legacy should be paid out of the residual estate, meaning it should be paid after distribution of the legacies to Vincent and Joan Ann. Given that expression of intent in Mr. Cannata’s will as ascertained by the above rules of interpretation, the trial court did not err in approving the priority of the legacies presented in the tableau of distribution.
In his next argument, Guy contends that the tableau failed to provide reasonable compensation for legal services provided by an attorney, Joseph Barreca, and a law firm, the “Sessions law firm.” The tableau of distribution proposed a payment of $2,500.00 to Barreca and rejected the claim of the Sessions law firm. Both of these creditors filed objections .and proofs of claim, seeking full compensation for work that they alleged was performed for the benefit of the succession. After a hearing on the matter, the trial court found that the work performed by these attorneys was done solely for the benefit of Guy or otherwise did not benefit the succession. The trial court thereafter signed a judgment, later amended, that authorized distributions to certain creditors, including other attorneys, and approved the tableau of distribution. Neither Barreca nor the Sessions law firm appealed the judgment.
When a judgment homologating a tableau of distribution or final account disallows a creditor’s claim, only the aggrieved creditor has the right to appeal the rejection of his claim. See Succession of Vatter, 191 La. 875, 878, 186 So. 597, 598 (1939); Succession of Ring, 170 La. 118, 120, 127 So. 384 (1930); Succession of Hartigan, 51 La. Ann. 126, 129, 24 So. 794, 795 (1898); Andrus v. His Creditors, 46 La. Ann. 1351, 1358, 16 So. 215, 218 (1894) (on rehearing); Chapoton v. Her Creditors, 46 La. Ann. 412, 413-14, 14 So. 882, 882-83 (1894); Succession of Moustier, 359 So.2d 1043, 1044 (La.App. 4 Cir.), writ denied, 362 So.2d 576 (La.1978). If the creditor fails to appeal, the judgment will not be disturbed for his benefit on appeal. See Succession of Vatter, 191 La. at 878, 186 So. at 598.
A party’s lack of standing or right to appeal may be noticed by an appellate court on its own motion. See La.Code Civ. Pro. art. 927(B); Chrysler First Financial Services Corporation v. ZIA Corporation, 542 So.2d 87, 89 (La.App. 1 Cir.1989). Guy has no right to seek review of the trial court’s judgment rejecting, in whole or part, the claims of the creditors. Because Barreca and the Sessions law firm did not appeal the judgment, it'is final with re: spect to them claims and will not be disturbed on appeal. See Succession of Vatter, 191 La. at 878, 186 So. at 598. For this reason, we do not consider Guy’s argument that the trial court erred in approving the tableau of distribution with respect to the claims of those creditors.
In his final argument concerning the tableau of distribution, Guy maintains that the trial court improperly amended the judgment. In the original judgment signed on August 29, 2011, the trial court ordered that certain creditors be paid specified amounts. Subject to those ex *371 penses, the court ordered that the tableau of. distribution filed by the administrator “move forward accordingly.” Thereafter, the administrator filed a motion to amend the judgment to alter the phraseology “to clearly set out the court’s ruling homolo-gating the administrator’s recommendation of distribution except as added to by the court[’]s ruling on certain debts.” Pursuant to that motion, the trial court signed an amended judgment on January 12, 12?,2012, to “alter the phraseology” of the' August 29, 2011 judgment to provide that the tableau of distribution “is hereby ho-mologated and the administrator is authorized to pay the estate debts listed therein.” The judgment further provided that the homologation was “subject to and consistent with the debts ordered to be paid ... in accordance with said tableau and Judgment of August 29, 20Í1.”
Amendments to judgments aré governed by Louisiana Code of Civil Procedure article 1951. At the time of the subject amendment, Article 1951 provided that a final judgment may be amended at any time to “alter the phraseology of the judgment, but not the substance.” A judgment may be amended by the court where the resulting judgment takes nothing from or adds nothing to the original judgment. Villaume v. Villaume, 363 So.2d 448, 450 (La.1978); Sanderford v. Mason, 12-1881 (La.App. 1 Cir. 11/1/13), 135 So.3d 745, 748-49. However, an amendment to a judgment which- adds to, subtracts from, or in any way affects the substance of the judgment, is considered a substantive amendment. Suprun v. Louisiana Farm Bureau Mutual Insurance Company, 09-1555 (La.App. 1 Cir. 4/30/10), 40 So.3d 261, 268. Substantive amendments to judgments can be made only by consent of the parties or after a party has successfully litigated a timely application for new trial, an action for nullity, or a timely appeal. Villaume, 363 So.2d at 451; Sanderford, 135 So.3d at 749.
The only distinction between the original and amended judgment is the phrasing of the court’s approval of the tableau of distribution. The August 29, 2011 judgment provided that the tableau “move forward accordingly,” and the January 12, 2012 judgment provided that the tableau -is “hereby homologated and the administrator is authorized to pay the debts” listed therein in accordance with the court’s original judgment. Thé amended judgment does not alter, in any respect, the court’s ruling on the claims of the creditors or the parents to be made l^by the administrator. The amended judgment replaced the phrase “move forward, accordingly” with “is hereby homologated.” We see no substantive difference in,this language. The “homologation” of a tableau of distribution means the court is “granting its approval” of the tableau. See Black’s Law Dictionary (9th ed.2009).. The original judgment conveyed the trial court’s approval by ordering that the tableau “move forward accordingly.” The amended judgment rephrased that approval by stating that the tableau was “homologated.” The change was one of phraseology, and not substance; therefore, the amended judgment was authorized by Article 1951. This assignment of error is without merit.
AUTHORIZATION TO SELL STOCK
-In his tenth assignment of error, Guy asserts that the trial court erred in authorizing the administrator to sell Mr, and Mrs. Cannata’s shares of preferred stock in Cannata Corporation. The order was rendered in response to a petition filed by the administrator seeking approval to sell the stock at a private sale for par value of $100 per share. The administrator represented that he had'entered into an agreement-.to, sell the stock and that *372 Cannata Corporation was willing to purchase the shares to facilitate the partial liquidation of the successions and the orderly satisfaction of the legacies. Guy opposed the petition, but the trial court authorized the sale. On appeal, Guy argues that the sale of Mrs. Cannata’s shares was unnecessary because her succession had adequate funds to pay her debts and legacies. He also- contends that the administrator did not allege or. prove that the board of directors for Cannata Corporation approved the purchase of the shares.
A succession representative may sell bonds and shares of stock at private sale at rates prevailing in the open market, by obtaining a court order authorizing the sale. La.Code Civ. Pro. art. 3285. A succession representative may sell succession property in order to pay debts and legacies, or for any other purpose, Ip/when authorized by the court. La. Code Civ. Pro. art. 3261; see also In re Succession of Landry, 13-0455 (La.App. 1 Cir. 12/27/13), 2013 WL 7122595. The phrase “for any other purpose” means any other lawful purpose or reason of necessity; it does not give to the executor or administrator carte blanche to sell succession property for any purpose or reason that he may deem sufficient. Succession of Pipitone, 204 La. 391, 399, 15 So.2d 801, 803-804 (1943); Matthews v. Horrell, 06-1973 (La.App. 1 Cir. 11/7/07), 977 So.2d 62, 73 n. 7. In considering an application for authority to sell succession property, the trial court must give consideration to any opposition and reasons for same; if-the court considers the sale in the best interest of the succession, it may authorize either the public or private sale of the Succession property. Succession of Taglialavore, 500 So.2d 393, 396 (La.1987); Succession of Lewis, 96-1935 (La.App. 1 Cir. 9/23/97), 700 So.2d 1002, 1005, writ denied, 97-2637 (La.1/16/98), 706 So.2d 977. The approval of an application to sell succession property at private sale rests within the sound discretion of the trial court. Succession of Taglialavore, 500 So.2d at 397.
The administrator represented to the trial court that the estates of Mr. and Mrs. Cannata may require liquidation of property in order to satisfy the claims of creditors and the legacies, and that the sale would facilitate the orderly satisfaction of legacies and distribution of property. The administrator’s concern of insufficient funds was well grounded, as Mr. Cannata’s estate, even after the stock sale, did not have sufficient cash assets to satisfy all legacies. While Guy argues that Mrs. Cannata’s estate had sufficient funds for all claims and legacies, the sale of her shares was not unlawful or unreasonable. Notably, Cannata Corporation’s articles of incorporation, provide that any redemption of preferred stock must be made on a “pro rata” basis from all preferred, shareholders. Based on that | ^provision, one may reasonably infer that Cannata Corporation was willing to purchase the shares only on a pro rata basis from both shareholders.
We are also not persuaded by Guy’s argument that the trial court erred in approving the sale because the administrator failed to allege or prove that the board of directors for Cannata Corporation approved - the transaction. Guy does not claim that the board of directors did not authorize the purchase; he merely contends that the administrator did not allege or prove that the board of directors authorized the purchase. The applicable law does not mandate that an administrator allege or prove that a corporate purchaser of succession property has been duly authorized to execute the transaction. Under Louisiana Code of Civil Procedure article 3281, a succession representative who desires to sell succession property at a *373 private sale must file a petition setting forth a description of the property, the price, and conditions of, and the reasons for, the proposed sale. If an agreement to sell has been executed, a copy of such agreement must be annexed to the petition. La.Code Civ. Pro. art. 3281(A). After publication of the required notice and consideration of any opposition, the trial court may authorize the sale and fix the price if the court considers the sale to be in the best interests of the succession. See La.Code Civ. Pro. arts. 3282-84; Succession of Taglialavore, 500 So.2d at 396.
These articles do not require allegations or proof of a corporate purchaser’s authority to acquire the property as a prerequisite to court approval of the sale. While a prudent administrator may well require a corporate resolution or other evidence of authority as a condition of the transaction, the absence of any allegations or proof of that authorization in the petition filed with the court does not mandate the denial of the administrator’s request for approval. We further note that the record in the present case contains no suggestion that Cannata Corporation was not authorized to redeem the stock, or that Cannata Corporation ever | ^attempted to rescind the sale based upon a purported lack of authorization from its board of directors.
The record reflects a lawful purpose for the sale of the preferred stock. Guy does not question the sale price, nor does hé dispute that the administrator complied with the procedural requirements for the sale. Under these circumstances, the trial court did not abuse its discretion in finding that the sale was in the best interests of the successions and in authorizing the sale. See La.Code Civ. Pro. art. 3261; In re Succession of Landry, Succession of Lewis, 700 So.2d at 1005. This assignment of error is without merit.
AUTHORIZATION TO PAY ADMINISTRATOR AND MEDIATOR FEES
In his thirteenth and fourteenth assignments of error, Guy asserts that the trial court erred in authorizing payment of the fees and costs of the administrator and the court-appointed mediator. Guy contends that the administrator should have listed the payments in a tableau of distribution filed in accordance with Louisiana Code of Civil Procedure article 3303, essentially challenging the procedure used to approve these payments.
The order appointing the administrator and mediator provided that they “shall be compensated for their services from the Successions of Fannie Cannata and Vincent Cannata, and that said fees will be set by this Court.” The administrator filed three requests on a somewhat annual basis seeking and obtaining court authorization for payment of his fees for services rendered during the respective periods encompassed by each request. The administrator also identified these payments and the payment to the mediator in an annual account and- the final account. Guy does not claim a lack of notice of the three requests for authorization, the annual account, and the final account.
127The only objection filed by Guy to the payment of these fees concerned the amount of the administrator’s fee. In response to the annual account, Guy objected to the administrator-being paid both attorney fees and an administrator’s fee. At the hearing of the matter, Guy acknowledged that the administrator could be paid in both capacities, but any attorney fees should be credited against the administrator’s fee. The administrator confirmed that he was only charging attorney fees, and the issue was never raised again. When the administrator filed his final account, which included all payments to the *374 administrator and the mediator, Guy made no objection to the'fees or the procedure utilized to pay the fees.
As previously recognized'herein, appellate courts will generally not consider issues that were not raised in the pleadings, were not addressed by the trial court, or that are raised for the first time on appeal. See Council of City of New Orleans v. Washington, 09-1067 (La.5/29/09), 9 So.3d 854, 856; Johnson v. Montoya, 13-1951 (La.App. 1 Cir. 5/2/14), 145 So.3d 418, 422; Hoover v. Hoover, 10-1245 (La.App. 1 Cir. 3/17/11), 62 So.3d 765, 770; see also Rule 1-3, Uniform Rules, Courts of Appeal. Despite numerous opportunities to object to the procedure utilized by the administrator to obtain court approval for payment of the fees of the administrator and inediator, the record contains not a single objection by Guy to that procedure. Under these circumstances, Guy’s failure to object to the procedure during the trial court proceedings precludes review of this issue on appeal. See Ary v. Personal Care, 10-2291 (La.App. 1 Cir. 6/10/11), 68 So.3d 1192, 1195, n. 2, writ denied, 11-1519 (La.10/7/11), 71 So.3d 317. These assignments of error are without merit.
hsHOMOLOGATION OF FINAL ACCOUNT
In his fifteenth assignment of error, Guy contends that the trial court erred in ho-mologating the final account. In addition to generally re-asserting arguments that we have already addressed, such as the jurisdiction of the trial court, Guy maintains that the trial court erred because “the final account that was ordered homol-ogated was different than the final account originally filed.” Guy also asserts that the trial court erred by refusing to permit him to present witness testimony, at.the hearing on the homologation.
In support of his first argument,. Guy points to three figures that were modified in the revised final account. However, at the hearing, Guy did not object to the revision of those figures.. Instead, Guy offered the revised final account into evidence as his exhibit. We note that at least one of the revisions, a reduction in the amount of the. indebtedness owed by Mrs. Cannata/s estate to Cannata’s Super Market, was requested by Guy in his opposition to the original final account.
As a general rule, appellate courts will not consider issues that were not raised in the pleadings, were not addressed by the trial court, or that are raised for the first time on appeal. See Council of City of New Orleans, 9 So.3d at 856; Johnson, 145 So.3d at 422; Hoover, 62 So.3d at 770; see also Rule 1-3, Uniform Rules, Courts of Appeal. While we recognize that, under special circumstances, Louisiana Code of Civil Procedure article 2164 provides authority for this court to consider an issue raised for the first time on appeal, we do not find such circumstances present here. See McLane Southern, Inc. v. Bridges, 13-1819 (La.App. 1 Cir. 11/3/14), 2014 WL 5588893, p. 5. Guy’s failure to object at the hearing to the revisions of the final account precludes review of this issue on appeal. See Ary, 68 So.3d at 1195, n. 2.
| asGuy next asserts that the trial court erred in refusing to permit him to present testimony at the homologation hearing. When Guy’s counsel expressed his' intention to call Guy as a witness, the trial court responded, “I’m not hearing testimony.”', Although the court did not provide express reasons for this ruling, the court’s comments — “I’ve been here [and] done it” — suggest that it considered the testimony unnecessary or cumulative of evidence previously produced in the proceeding. In that regard, we note that the trial court allowed Guy to introduce into evi *375 dence the transcripts of all prior evidentia-ry hearings in the proceeding, including the hearings addressing the jurisdiction of the trial court and the homologation of the tableau of distribution.
An opposition to a final account must be tried as a summary proceeding. See La. Code Civ. Pro. arts. 2592(5) and 3336. Summary proceedings are those which áre conducted with rapidity, withiri the delays allowed by the court,' and without citation and the observance of all the formalities required in ordinary proceedings. La. Code Civ. Pro. art. 2591. A summary proceeding may be tried in open court or in chambers; and, unless otherwise provided by law,'a party may present evidence at the trial. See La.Code Civ. Pro. arts. 2595, 2596, 1632; LaMoyne-Clegg Development Corporation v. Bonfanti-Fackrell, Ltd., 509 So.2d 43, 45 (La.App. 1 Cir.1987); cf. La.Code Civ. Pro. arts. 931 (prohibiting evidence to support or controvert the objection that a petition fails to state a cause of action) and 966(B)(2)' (limiting permissible evidence to support or oppose a motion for summary judgment).
However, a trial court has discretion in conducting a trial in an orderly, expeditious manner, and to control the proceedings so that justice is done. See La.Code Civ. Pro. art. 1631. This discretion includes the admissibility of a witness’s testimony. Pipeline Technology VI, LLC v. Ristroph, 07-1210 (La.App. 1 Cir. 5/2/08), 991 So.2d 1, 7, writ denied, 08-1676 (La.10/24/08), 992 So.2d 1037. Generally, the trial court is granted broad discretion on its evidentiary rulings, and its determinations will not be disturbed on appeal absent a clear abuse of that discretion. Odyssea Vessels, Inc. v. A & B Industries of Morgan City, Inc., 11-2009 (La.App. 1 Cir. 6/13/12), 94 So.3d 182, 192.
. Guy’s counsel proffered testimony from Guy and Joseph Barreca, an attorney who previously represented Mr. Cannata. Guy testified about his parents’..residences and living arrangements in the years before, their respective deaths, while Barreca testified about preparing the codicil to Mr. Cannata’s will. Guy provided no testimony about the final account, and Barreca’s testimony concerned the final account only insofar as the account reflected the legacies already set' forth in the tableau of distribution, which had been previously approved by the trial court. Opposing counsel objected to the testimony as irrelevant and hearsay.
On appeal, Guy does not indentify any particular testimony from these witnesses that supports his assertion that the trial court erred in homologating the final account. Based upon our review, the testi-moiiy proffered, at thé hearing to homolo-gate the final account was either irrelevant to'the final account or was cumulative of evidence presented at prior hearings. Accordingly,’ the trial court did not abuse its discretion in excluding the testimony. See Odyssea Vessels, Inc., 94 So.3d at 192; Pipeline Technology VI, LLC, 991 So.2d at 7. This assignment of error is without merit.
JUDGMENT OF POSSESSION
In his final assignment of error, Guy asserts that the judgment of possession should be vacated because the trial court lacked jurisdiction and because the homol-ogation of the final account should be reversed. Guy also generally asserts all other grounds presented on appeal. .For the reasons previously assigned, we |mfind no merit to Guy’s challenge to the trial court’s jurisdiction and to the homologation of the final account. As to the other grounds asserted on appeal, we found merit only in Guy’s contention that the trial court improperly removed and replaced the representatives of the successions. However, *376 our ruling in that regard does not invalidate the judgment of possession. See La. Code Civ. Pro. arts. 2122, 2974, 3182; Succession of Koch, 379 So.2d at 1083. This assignment of error is without merit.
CONCLUSION
We overrule the exception of lack of subject matter jurisdiction. We affirm the January 12, 2012 judgment homologat-ing the tableau of distribution, the October 21, 2013 judgment homologating the final account and granting the judgment of possession, and all interlocutory orders. We vacate the May 11, 2007 judgment removing and replacing the succession representatives; however, a remand is unnecessary because the administrator’s prior actions remain valid and concluded both successions. A judgment of possession has been signed in the consolidated proceeding, a final account has been approved, .and the administrator has been discharged. A judgment homologating a final account and discharging the administrator operates as a closing of the succession. Succession of Quaglino, 223 La. 171, 177-78, 65 So.2d 127, 129 (1953). All costs of these consolidated appeals are assessed to Guy Canna-ta.
EXCEPTION OVERRULED; MAY 11, 2007 JUDGMENT REMOVING AND REPLACING SUCCESSION REPRESENTATIVES VACATED; ALL OTHER JUDGMENTS AND ORDERS AFFIRMED.
McDONALD, J., agrees in part and concurs in part and assigns reason.
HOLDRIDGE, J., concurs for reasons assigned by Judge McDONALD (by Juris).

. One child, Anthony Vincent Cannata, predeceased Mr, and Mrs. Cannata.

. It is irrelevant to the burden of proof that Guy did not file an exception of subject matter jurisdiction in the trial court. Once the issue of jurisdiction was raised, Guy'claimed that Mr. Cannata changed his domicile, therefore he bore the’ burden of proving such change.

. In response to the motion to consolidate filed by Joan Ann and Vincent, Guy filed an exception of no right of action. An exception of no right of action is a threshold device to terminate a suit brought by one who has no interest in judicially enforcing the right asserted. Stassi v. State, 11-2264 (La.App. 1 Cir. 9/13/12), 102 So.3d 896, 898. The exception is properly filed in response to a petition. Cf. Trahan v. State ex rel. Dept. of Health and Hospitals, 04-743 (La.App. 3 Cir. 11/10/04), 886 So.2d 1245, 1251 n. 2. Filing an exception of no right of action in response to a motion to consolidate is procedurally incorrect. Id. Nonetheless, Louisiana is a fact-pleading'state that values substance over form and requires courts to look beyond the caption of pleadings in order to ascertain , their substance and to do substantial justice to the parties. Southeastern Louisiana University v. Cook, 12-0021 (La.App. 1 Cir. 9/21112), 104 So.3d 124, 127-28. Clearly the exception set *364 forth Guy's objection to the motion to consolidate because he did not join in the motion with Vincent and Joan Ann. Accordingly, we will consider the propriety of the trial court’s consolidation of the cases over Guy’s objection.

. The petition was amended to add the court-appointed administrator as a defendant.